Marvin D. HENDRIX et al *v.*
SIDNEY M. THOM & CO. et al

CA 80-306                                    609 S.W. 2d 98
Court of Appeals of Arkansas
Opinion delivered December 10, 1980

*Laser, Sharp, Haley, Young, & Huckabay, P.A.,* for appellants.

*Middleton P. Ray, Jr., Frank B. Sewell* and *Stephen L. Gershner,* for appellees.

JAMES H. PILKINTON, Judge. Appellants Marvin D. Hendrix and Michael W. Fendley are businessmen, engaged in land development under the name of Fendley & Hendrix Development Company. Both appellants, who will hereinafter be called Hendrix and Fendley, respectively, have had experience in the business of land development and are familiar with contracts of the type which are the subject of this action.

On or about December 9, 1977, Hendrix and Fendley retained appellee Sidney M. Thom & Co., Inc. (hereinafter called "Thom"), a mortgage banking firm, of Little Rock, Arkansas, to arrange for them a mortgage loan of $577,500.00 for 25 years, with interest at 9-⅛% per annum, to be repaid in monthly installments, including interest. The loan was to be evidenced by a note to be executed by the appellants and secured by a first lien on real property located on the Highway 59 By-pass, in Atlanta, Texas. The purpose of this loan was to construct a Wal-Mart store and place it on a permanent loan basis.

The agreement between Thom and appellants was executed by Hendrix and Fendley. This agreement called for the payment to Thom, for its services, the sum of $5,775.00. Appellants paid to Thom the sum of $5,775.00.

On or about December 12, 1977, Thom secured a loan commitment from appellee National Old Line Insurance Company (hereinafter called "National Old Line"), which was issued on December 21, 1977. As agent for and on behalf of the appellants, and with their knowledge and consent, Thom issued its check to National Old Line in the sum of $5,-775.00, which represented one-half of the "good faith" com-

mitment fee that National Old Line required from appellants before the loan commitment would be made.

On or about December 30, 1977, appellants accepted the loan commitment offered by National Old Line. The brokerage commission claimed by Thom had not been paid as the only funds received by Thom were paid to National Old Line on behalf of the appellants.

The commitment issued by National Old Line was negotiated by appellants with National Old Line. The commitment called for the payment by appellants to National Old Line of a "good faith" fee of $11,550.00. This fee was paid, $5,775.00, of which was paid by the appellants and $5,775.00 by Thom on behalf of the appellants. This fee was to be refunded if the loan was closed in accordance with the commitment.

In addition to the "good faith" fee, which was paid, the commitment called for the execution by appellants of a non-interest bearing promissory note, payable to National Old Line, in the amountof $11,550.00, which was to be in consideration of the issuance of the commitment. The note was to be payable on September 1, 1978, only in the event that the loan covered by the commitment was not closed.

Appellants executed to National Old Line the promissory note for $11,550.00 as agreed. Because of the loan commitment by National Old Line to appellants, National Old Line arranged its corporate financial affairs in order to have the money available to fund the loan called for by the commitment.

Appellants, after the signing of the commitment, were unable to consummate their purchase of the land in Atlanta, Texas, upon which the Wal-Mart facility was to be constructed. They contended they had a valid cause of action against the land owner for breach of contract; however, in order not to compromise their future relationship with Wal-Mart, and seeing a way to obtain a profit, appellants accepted the sum of $22,000.00, paid by the owner of the land, for the release of all claims against the property. The Wal-Mart facility was subsequently built, but appellants were not involved.

By a letter dated February 9, 1978, which letter was received by National Old Line on February 13, 1978, appellants requested the cancellation of the commitment and a "reasonable cancellation of obligations." Appellants stated they would be unable to perform under the terms of the commitment because they were unable to purchase the property which was to be the security for the loan.

Appellees contended that appellants by their action repudiated the commitment, thereby breaching their contract with National Old Line. Appellees took the position National Old Line had performed under the terms of the commitment insofar as it was able in view of the repudiation by appellants.

National Old Line did not agree to a cancellation of the commitment and the loan covered by the commitment was not closed during July, 1978, in accordance with the terms of the commitment. Therefore, National Old Line claims, under the terms of the commitment, it was entitled to retain the $11,550.00 "good faith" fee paid by the appellants, or in their behalf; and to collect the note executed by the appellants which became due and payable on September 1, 1978, and has not been paid.

Hendrix and Fendley filed this suit, praying for return of the fees paid to Thom and National Old Line, and for cancellation of the note held by National Old Line under the commitment agreement. They alleged, and sought to prove, that construction financing was refused them because the commitment was conditional, and required subjective exercise of judgment by National Old Line; but, in any event, that the project was cancelled and notice was given to National Old Line prior to the commitment becoming binding. Thom and National Old Line denied the allegations, and counterclaimed. Thom claimed its brokerage fee was justly paid; and National Old Line prayed for a declaratory judgment that the agreement is valid and enforceable, and for a finding that it is entitled to keep the "good faith" commitment fee it now holds; and to collect on the note from Hendrix and Fendley.

The lower court dismissed the complaint for want of equity, and entered judgment on both counterclaims. Hendrix and Fendley have appealed.

We think the chancery court was correct and therefore affirm in all respects.

The evidence is clear that Thom fully performed under the brokerage contract, and thus earned its fee. Pursuant to its agreement with appellants, Thom arranged the loan commitment with National Old Line, and nothing Thom did caused the project to be cancelled. The record clearly shows that Thom fully performed his obligation to appellants.

We also agree with the chancellor that the commitment in question, issued by National Old Line, was a valid and enforceable contract. We find no merit in appellants' contention that it was a conditional and illusory agreement. It is true that this commitment contained a so-called "satisfaction clause" with reference to the site, but the document was nevertheless a binding agreement. National Old Line could not have made a determination that it was not satisfied with the site except in good faith and for valid reasons. Thus the duty to act in good faith was sufficient consideration to support the contract, notwithstanding appellants' argument that the promises involved were illusory. *Mattei* v. *Hopper*, 51 Cal. 2d 119, 330 P. 2d 625 (1958); *Larwin-Southern California, Inc.* v. *JGB Investment Company*, 101 Cal. App. 3d 626, 162 Cal. Rptr. 52 (1979); *Commercial Mortgage and Finance Corp.* v. *Greenwich Savings Bank*, 112 Ga. App. 388, 145 S.E. 2d 249 (1965); *Boston Road Shopping Center, Inc.* v. *Teachers Insurance and Annuity Association of America*, 13 App. Div. 2d 106, 213 N.Y.S. 2d 552 (1961), Aff'd 11 N.Y. 2d 831, 182 N.E. 2d 116, 227 N.Y.S. 2d 444 (1962). See also Draper, *Tight Money and Possible Substantive Defenses to Enforcement of Future Mortgage Commitments*, 50 Notre Dame Lawyer 603 (1975).

The commitment issued by National Old Line was consideration for the commitment fee. This commitment obviously had value to appellants. They had paid the refundable "good faith" fee in the amount of $11,550.00, and executed a promissory note in the same amount for the commit-

ment. The note was to become payable on September 1, 1978, in the event the loan was not closed in accordance with the commitment letter. The record shows that appellants lost their option on the land involved and the project fell through for that reason. Appellant Hendrix admitted that the commitment would have been satisfactory if the project could have been built as anticipated. Under these circumstances, we cannot say that the decree of the chancery court is not correct. See *Goldman* v. *Connecticut General Life Insurance Company*, 251 Md. 575, 248 A. 2d 154 (1968). See also 93 ALR3d 1156 (1979).

The chancellor concluded that the commitment contract issued by National Old Line, and accepted by appellants, was a binding obligation, and that the enforcement of its terms did not depend upon any condition precedent.

We do not disturb a decree of the chancery court on appeal unless it is clearly erroneous. Rule 52, Arkansas Rules of Civil Procedure.

Affirmed.

WRIGHT, C.J., dissents.

ERNIE E. WRIGHT, Chief Judge, dissenting. I respectfully dissent from the majority opinion affirming the trial court's decree determining the loan commitment issued by National Old Line and accepted by appellants on December 30, 1977, constituted a valid and enforceable contract between National Old Line and appellants.

The part of the majority opinion with which I disagree concerns the issue as to whether Naional Old Line is entitled to the fee of $23,100.00 it seeks to exact for its loan commitment to appellants. The commitment contained numerous conditions and most of them are reasonable and in keeping with what might normally be expected in such transactions. However, the commitment contains among others the following condition:

This commitment is issued prior to an "on-site" inspec-

tion by either National Ole Line Insurance Company or persons designated by National Old Line Insurance Company. Until written approval confirming acceptance of the site and/or existing improvements, this commitment is subject to cancellation. Prior to this inspection being made, National Old Line Insurance Company will need to be favored with an inspection fee in the amount of $75.00 to partially cover the incurred cost in making this inspection.

Prior to any inspection of the site being made, appellants by letter dated February 9, 1978, received by National Old Line February 13, 1978, requested cancellation of the commitment because appellants had been frustrated in their endeavors to exercise their option to purchase the property which they planned to develop with the loan funds.

National Old Line assumed the posture it was entitled to the $23,100.00 charges for the commitment if the loan was not closed regardless of the reasons for failure to close. Appellants contend the commitment is in reality an illusory promise and provides no firm consideration flowing to appellants because of the clause permitting cancellation any time prior to the site for the improvement being approved in writing by National Old Line. The commitment is on the letterhead of National Old Line and it can be assumed from all the circumstances it was drafted by it or at its direction. In keeping with the general rule applicable to the construction of contracts, it should be construed most strongly against the party responsible for drafting the document. With this rule in mind, I am unwilling to say that only National Old Line had the right to cancel the commitment, but on the contrary it is my view appellants likewise had the right any time prior to approval of the site by National Old Line. The notice given by appellants operated to cancel the conditional loan commitment and appellants should be allowed recovery of the portion of the commitment fees paid National Old Line and cancellation of the note given for the balance of the fees stipulated in the commitment. As stated by Justice Leflar in *Motors Ins. Corporation* v. *Lopez*, 217 Ark. 203, 229 S.W. 2d 228 (1950), "This one-sided undertaking is not a contract in any legal sense." At the time appellants cancelled the com-

mitment had not become a firm obligation on the part of National Old Line.