[No. 8457-7-I.   Division One.   May 24, 1982.]

OMNI GROUP, INC., *Appellant*, v. SEATTLE–FIRST NATIONAL BANK, *as Executor, Respondent.*

*Laurason T. Hunt,* for appellant.

*David Tewell* and *C. Frederick Barker,* for respondent.

James, J.—Plaintiff Omni Group, Inc. (Omni), a real estate development corporation, appeals entry of a judgment in favor of John B. Clark, individually, and as executor of the estate of his late wife, in Omni's action to enforce an earnest money agreement for the purchase of realty owned by the Clarks.[1] We reverse.

In December 1977, Mr. and Mrs. Clark executed an exclusive agency listing agreement with the Royal Realty Company of Bellevue (Royal) for the sale of approximately 59 acres of property. The list price was $3,000 per acre.

In early May, Royal offered the Clark property to Omni. On May 17, following conversations with a Royal broker, Omni signed an earnest money agreement offering $2,000 per acre. Two Royal brokers delivered the earnest money agreement to the Clarks. The Clarks signed the agreement dated May 19, but directed the brokers to obtain further consideration in the nature of Omni's agreement to make certain improvements on adjacent land not being offered for sale. Neither broker communicated these additional

---

[1]Following Mr. Clark's death, Seattle–First National Bank, as executor of his estate, was substituted as respondent in this appeal.

terms to Omni.

In pertinent part, the earnest money agreement provides:

This transaction is subject to purchaser receiving an engineer's and architect's feasibility report prepared by an engineer and architect of the purchaser's choice. Purchaser agrees to pay all costs of said report. If said report is satisfactory to purchaser, purchaser shall so notify seller in writing within fifteen (15) days of seller's acceptance of this offer. If no such notice is sent to seller, this transaction shall be considered null and void.

Exhibit A, ¶ 6. Omni's purpose was to determine, prior to actual purchase, if the property was suitable for development.

On June 2, an Omni employee personally delivered to the Clarks a letter advising that Omni had decided to forgo a feasibility study. They were further advised that a survey had revealed that the property consisted of only 50.3 acres. The Clarks agreed that if such were the case, they would accept Omni's offer of $2,000 per acre but with a minimum of 52 acres ($104,000). At this meeting, the Clarks' other terms (which had not been disclosed by Royal nor included in the earnest money agreement signed by the Clarks) were discussed. By a letter of June 8, Omni agreed to accept each of the Clarks' additional terms. The Clarks, however, refused to proceed with the sale after consulting an attorney.

The Clarks argued and the trial judge agreed, that by making its obligations subject to a satisfactory "engineer's and architect's feasibility report" in paragraph 6, Omni rendered its promise to buy the property illusory. Omni responds that paragraph 6 created only a condition precedent to Omni's duty to buy, and because the condition was for its benefit, Omni could waive the condition and enforce the agreement as written. We conclude Omni's promise was not illusory.

A promise for a promise is sufficient consideration to support a contract. *E.g., Cook v. Johnson,* 37 Wn.2d 19, 221 P.2d 525 (1950). If, however, a promise is illusory, there is

no consideration and therefore no enforceable contract between the parties. *Interchange Assocs. v. Interchange, Inc.*, 16 Wn. App. 359, 557 P.2d 357 (1976). Consequently, a party cannot create an enforceable contract by waiving the condition which renders his promise illusory. But that a promise given for a promise is dependent upon a condition does not necessarily render it illusory or affect its validity as consideration. *In re Estate of Tveekrem*, 169 Wash. 468, 14 P.2d 3 (1932); 1 A. Corbin, *Contracts* § 149 (1963); 3A A. Corbin, *Contracts* § 644 (1960). Furthermore,

> a contractor can, by the use of clear and appropriate words, make his own duty expressly conditional upon his own personal satisfaction with the quality of the performance for which he has bargained and in return for which his promise is given. Such a limitation on his own duty does not invalidate the contract as long as the limitation is not so great as to make his own promise illusory.

3A A. Corbin, *Contracts* § 644, at 78–79 (1960).

Paragraph 6 may be analyzed as creating two conditions precedent to Omni's duty to buy the Clarks' property. First, Omni must receive an "engineer's and architect's feasibility report." Undisputed evidence was presented to show that such "feasibility reports" are common in the real estate development field and pertain to the physical suitability of the property for development purposes. Such a condition is analogous to a requirement that a purchaser of real property obtain financing, which imposes upon the purchaser a duty to make a good faith effort to secure financing. *See Highlands Plaza, Inc. v. Viking Inv. Corp.*, 2 Wn. App. 192, 467 P.2d 378 (1970). In essence, this initial language requires Omni to attempt, in good faith, to obtain an "engineer's and architect's feasibility report" of a type recognized in the real estate trade.

The second condition precedent to Omni's duty to buy the Clarks' property is that the feasibility report must be "satisfactory" to Omni. A condition precedent to the promisor's duty that the promisor be "satisfied" may require performance personally satisfactory to the promisor

or it may require performance acceptable to a reasonable person. Whether the promisor was actually satisfied or should reasonably have been satisfied is a question of fact. In neither case is the promisor's promise rendered illusory. 3A A. Corbin, *Contracts* § 644 (1960).

In *Mattei v. Hopper,* 51 Cal. 2d 119, 121, 330 P.2d 625 (1958), plaintiff real estate developer contracted to buy property for a shopping center "'[s]ubject to Coldwell Banker & Company obtaining leases satisfactory to the purchaser.'" Plaintiff had 120 days to consummate the purchase, including arrangement of satisfactory leases for shopping center buildings, before he was committed to purchase the property. The trial judge found the agreement "illusory." The California Supreme Court reversed. The court's language is apposite:

> [I]t would seem that the factors involved in determining whether a lease is satisfactory to the lessor are too numerous and varied to permit the application of a reasonable man standard as envisioned by this line of cases. Illustrative of some of the factors which would have to be considered in this case are the duration of the leases, their provisions for renewal options, if any, their covenants and restrictions, the amounts of the rentals, the financial responsibility of the lessees, and the character of the lessees' businesses.

Comparable factors doubtless determine whether an "engineer's and architect's feasibility report" is satisfactory. But

> This multiplicity of factors which must be considered in evaluating a lease shows that this case more appropriately falls within the second line of authorities dealing with "satisfaction" clauses, being those involving fancy, taste, or judgment. Where the question is one of judgment, the promisor's determination that he is not satisfied, when made in good faith, has been held to be a defense to an action on the contract. . . . Although these decisions do not expressly discuss the issues of mutuality of obligation or illusory promises, they necessarily imply that the promisor's duty to exercise his judgment in good faith is an adequate consideration to support the contract. None of these cases voided the contracts on the ground that they were illusory or lacking in mutuality of

obligation. Defendant's attempts to distinguish these cases are unavailing, since they are predicated upon the assumption that the deposit receipt was not a contract making plaintiff's performance conditional on his satisfaction. As seen above, this was the precise nature of the agreement.

Further,

> Even though the "satisfaction" clauses discussed in the above–cited cases dealt with performances to be received as parts of the agreed exchanges, the fact that the leases here which determined plaintiff's satisfaction were not part of the performance to be rendered is not material. The standard of evaluating plaintiff's satisfaction—good faith—applies with equal vigor to this type of condition and prevents it from nullifying the consideration otherwise present in the promises exchanged.

*Mattei v. Hopper, supra* at 123–24. Thus, even the fact that "[i]t was satisfaction with the leases that [the purchaser] was himself to obtain" was immaterial. 3A A. Corbin, *Contracts* § 644, at 84. *Accord, Western Hills, Or., Ltd. v. Pfau,* 265 Or. 137, 508 P.2d 201, 203 (1973) (purchaser was to obtain necessary permits for a development "'satisfactory' to the parties"); *Hendrix v. Sidney M. Thom & Co.,* 271 Ark. 378, 382, 609 S.W.2d 98, 101 (Ct. App. 1980) (loan commitment contract requiring lender's "'satisfaction" with site upon which borrower's project was to be constructed). We conclude that the condition precedent to Omni's duty to buy requiring receipt of a "satisfactory" feasibility report does not render Omni's promise to buy the property illusory.

Paragraph 6 further provides, "If said report is satisfactory to purchaser, purchaser shall so notify seller in writing within fifteen (15) days of seller's acceptance of this offer"; otherwise, the transaction "shall be considered null and void." We read this language to mean that Omni is required ("shall") to notify the Clarks of its acceptance if the feasibility report was "satisfactory." As we have stated, this determination is not a matter within Omni's unfettered discretion.

■ Omni has, by the quoted language, reserved to itself a power to cancel or terminate the contract. *See generally* 1A A. Corbin, *Contracts* § 265 (1963). Such provisions are valid and do not render the promisor's promise illusory, where the option can be exercised upon the occurrence of specified conditions. 1A A. Corbin, *Contracts* § 265 (1963); *Benard v. Walkup,* 272 Cal. App. 2d 595, 77 Cal. Rptr. 544, 550 (1969) (fee agreement permitting counsel to withdraw "if 'in his opinion'" investigation of the client's claim indicated no liability of the defendant or contributory negligence of the plaintiff); *Wroten v. Mobil Oil Corp.,* 315 A.2d 728, 730 (Del. 1973) (lease permitting prospective tenant to terminate if licenses and permits "in manner and form acceptable to tenant" were not obtained). Here, Omni can cancel by failing to give notice only if the feasibility report is not "satisfactory." Otherwise, Omni is bound to give notice and purchase the property. Accordingly, we conclude paragraph 6 does not render Omni's promise illusory. The earnest money agreement was supported by consideration.

Clark contends an alternative theory upon which the judgment may be affirmed is that Omni constituted Royal its agent for negotiating the earnest money agreement and that the Clarks' additional terms constituted a counteroffer and rejection of Omni's terms, of which Omni had notice through "its" agent. We do not agree.

■■ The party who asserts the existence of an agency relationship bears the burden of proof. *Moss v. Vadman,* 77 Wn.2d 396, 463 P.2d 159 (1969); *Seattle–First Nat'l Bank v. Pacific Nat'l Bank,* 22 Wn. App. 46, 587 P.2d 617 (1978). If no finding of fact is entered as to a material issue, it is deemed to have been found against the party having the burden of proof. *Manufacturers Acceptance Corp. v. Irving Gelb Wholesale Jewelers, Inc.,* 17 Wn. App. 886, 565 P.2d 1235 (1977). The record discloses only that Royal delivered the earnest money agreement to the Clarks after a discussion of possible terms with Omni. No finding was entered which would permit us to conclude that an additional agency relationship existed between Omni and Royal, who

were the Clarks' agents in this transaction. Any cause of action arising because the Clarks' agents failed to convey their additional terms does not affect the validity of the earnest money agreement signed by the Clarks.

The judgment is reversed and remanded with instructions to enter a decree ordering specific performance of the earnest money agreement.

DURHAM, A.C.J., and CALLOW, J., concur.

Reconsideration denied June 24, 1982.

Review denied by Supreme Court October 8, 1982.