[No. 5121–8–III.   Division Three.   November 29, 1983.]

TATE–REYNOLDS COMPANY, INC., *Appellant,* v. INLAND METAL FABRICATORS, INC., *Respondent.*

---

*Gerald Roach* and *Campbell, Johnston & Roach, P.S.,* for appellant.

*Michael C. Kinnie* and *Hurson, Felsted & Nickola,* for respondent.

GREEN, J.—Tate–Reynolds, Inc. (T–R) appeals from a judgment dismissing its complaint for $9,446 based upon an alleged modification of a contract, and the entry of a judgment for $2,467.92 in favor of Inland Metal Fabricators, Inc., on its counterclaim. The appeal presents the issue of whether the court erred in failing to find a modification of the contract as a matter of law and fact. We affirm.

Considering the evidence in a light most favorable to Inland Metal, as we must do, the record shows the following sequence of events. On September 7, 1979, T–R and Inland entered into a written contract in which it was agreed T–R would deliver to the Hanford project 71 Ferlam expansion joints for $135,500. T–R was a supplier and Inland was a second–tier subcontractor on the project

responsible for installing the ductwork and appurtenances to that work which included expansion joints. The contract provided (1) T–R would ship the joints "ASAP—See Below"; (2) T–R would deliver the joints to the jobsite "within 10 weeks after submittal approval or order to proceed"; and (3) the total price included delivery to the jobsite. The drawings for the joints were approved in October and the order to proceed was given at a November 7 meeting of most of the subcontractors involved in the project.

In mid–January 1980, it became apparent to Inland that the joints would not arrive as scheduled. Inland immediately contracted T–R and other subcontractors involved to determine the problem. Inland sent letters to Mr. Swartz of T–R requesting the most rapid acceleration possible and advising "when we receive the amount of additional freight charges, we will mail through to you a change order covering the first $845.00 acceleration charges, plus the special freight charges." Inland never issued a change order. The first six joints were shipped January 30, 1980, but did not arrive until March 10. The last shipment of joints arrived in April 1980. Inland paid $2,467.92 for direct freight charges in addition to the contract price of $135,500.

T–R then commenced this action for $9,446 resulting from the acceleration, *i.e.*, overtime and freight charges. Inland counterclaimed for freight charges it paid to expedite delivery of contracted materials. Following trial, T–R's complaint was dismissed and judgment was entered in favor of Inland on its counterclaim. T–R appeals.

First, T–R contends the court erred in failing to find the contract had been modified. T–R argues the original contract price of $135,500 was modified by verbal communication of the parties and confirmed in writing wherein Inland agreed to pay additional costs for accelerating the contract and freight charges. It is claimed the modification is undisputed, and therefore the appellate court should imply a finding consistent with the undisputed evidence. *Tacoma Comm'l Bank v. Elmore*, 18 Wn. App. 775, 573 P.2d 798 (1977). We disagree.

■ Here T–R had the burden of proving modification. The evidence on this issue was in dispute at trial. Therefore, the rule relied upon by T–R is not applicable. Rather, in the absence of a finding on a material disputed issue, the court is deemed to have found against the party having the burden of proof. *Puget Sound Nat'l Bank v. St. Paul Fire & Marine Ins. Co.,* 32 Wn. App. 32, 645 P.2d 1122 (1982); *Omni Group, Inc. v. Seattle–First Nat'l Bank,* 32 Wn. App. 22, 645 P.2d 727 (1982).

Second, contrary to T–R's contention, there is sufficient evidence to support the trial court's findings, in particular the findings, "The order to proceed was given November 7, 1979. . . . [T–R] was late in delivering the expansion joints . . . [and T–R] had miscalculated its ability to perform within the time frame of the contract . . ."

T–R argues the delay in performance was because it did not receive the order to proceed until sometime in January and there were delays resulting from the buy American act. There is substantial evidence to support the finding that the order to proceed was given November 7, 1979. Further, the contract provided: "Full manufacture of the joints will be of US origin except for the blue asbestos material." Thus, T–R must be held to have considered the delay inherent in this requirement at the time it agreed to the date of performance. The risk of that misjudgment must be borne by T–R.

■ Finally, T–R's contention a modification occurred is not supported by the record. Inland's letters and verbal communications, which T–R claims constituted a modification of the contract, occurred *after* the time for T–R's performance had elapsed. At that time, Inland was concerned about meeting the time constraints of its own subcontract. T–R had not performed according to schedule threatening Inland's performance under its subcontract. Consequently, we do not perceive the communications to constitute a modification. As the trial judge pointed out, Inland was in a bind in performing its obligations to the general contractor and was willing to do whatever was necessary to secure

T–R's promised performance. It would be incongruous, indeed, to require Inland to pay additional sums to obtain T–R's promised performance, where the time for performance had passed and T–R had breached the contract. This would result in rewarding T–R for its own breach—a result the court should not sanction. *See* J. White & R. Summers, *Uniform Commercial Code* § 1–5, at 46–48 (2d ed. 1980). Thus, we find no error in the trial court's failure to find and conclude there was a modification of the Tate–Reynolds–Inland contract.

Affirmed.

MUNSON, C.J., and LOY, J. Pro Tem., concur.