**BEAVERS SERVICE, INC., Appellant,**

and

**880 Eye Street, N.W. Associates Limited Partnership, The John Akridge Company, and John E. Akridge III, Cross-Appellants,**

v.

**George M. NORRIS, Appellee.**

Nos. 82–1636, 83–25.

District of Columbia Court of Appeals.

Argued Sept. 14, 1983.

Decided Dec. 14, 1983.

---

* Associate Judge Terry has recused himself    from participating in this case.

Michael P. Bentzen, Washington, D.C., with whom David S. Klontz, Washington, D.C., was on the brief, for appellant.

Christopher Sanger, Washington, D.C., for cross-appellants.

Ernest F. Henry, Washington, D.C., for appellee.

Before NEWMAN, Chief Judge, and MACK and TERRY, Associate Judges.

NEWMAN, Chief Judge:

This appeal involves a dispute over the sale of commercial real property owned by George M. Norris and located in the District of Columbia. Both Norris' tenant, Beavers Service Inc. ("Beavers"), and a third party, 880 Eye St., N.W. Associates Ltd. Partnership ("Associates"), sought to purchase the property. Norris ultimately refused to sell to either party. In the various suits that followed, Judge Bowers granted summary judgment in favor of Norris, finding that Norris had reserved the right to refuse to sell his property to either party. The issues presented on appeal are: (1) whether the trial court erred when it found that Beavers submitted a binding contract to Norris for the same price and terms as the contract executed and submitted by Associates; (2) whether the trial court erred in deciding that under paragraph 16(a) of the Beavers lease, Norris could unilaterally terminate and reject both contracts; and (3) whether the trial court erred when it failed to order Norris to convey the property under dispute to Beavers. Finding that Beavers submitted a binding contract to Norris, we reverse and remand with an order to enter judgment for Beavers.

Around April 2, 1979, Norris and Beavers entered into a lease agreement for commercial property located in the District of Columbia. Paragraph 16(a) of the lease provides:

In the event Lessor [Norris] receives from a non-governmental agency an offer acceptable to him for the purchase of the demised premises during the effective period of this lease, Lessee [Beavers] shall have the right to receive a written notice from Lessor, stating the price and terms of such offer and Lessee shall have the right to purchase the same for the same price and terms of said offer provided Lessee tenders to Lessor a binding contract to that effect within thirty (30) days of receipt of such notice, it being fully understood and agreed that Lessor may, nevertheless, decide to refuse any and all offers of purchase prior to actual execution by him of a binding contract.

In May 1980, an agent of Associates discussed with Norris the sale of his property. On June 6, 1980, a contract to purchase the property for $800,000, already executed by Associates, was submitted to Norris. Norris executed this contract on the same day. The contract included a $20,000 deposit, and acknowledged Beavers' tenancy and right of first refusal:

As a condition for the execution of this contract prior to compliance with certain terms of the current lease of the subject property it is understood and agreed by the parties hereto that the current Lessee of the subject property is entitled to notice of the price and terms hereof and has the right to purchase the same for the same price and terms provided said Lessee tenders a binding contract to that effect within thirty (30) days of receipt of such notice and that this contract and all of its terms shall remain in abeyance during the period necessary for compliance with such lease provisions and, further, this contract and all of its terms shall become null and void upon actual consummation of such binding contract tendered by such Lessee through settlement and title transfer. In the event

that such tendered purchase contract by Lessee fails to be consummated and settled as aforesaid and the Seller herein is relieved of responsibility and liability thereunder, the period of abeyance aforementioned shall terminate and the parties hereto shall proceed to consummate the terms of this contract as otherwise provided herein.

Norris notified Beavers of the Associates contract and of Beavers' right to purchase the property on June 7, 1980. Beavers tendered a contract and a deposit check for $20,000 to Norris for the purchase of the property within the 30 day period.

The contract submitted by Beavers differed from the Associates contract in two respects: (1) Beavers was substituted as purchaser and the paragraph acknowledging Beavers' right of first refusal was deleted; and (2) two paragraphs in the Associates contract which called for payment to Associates' agent were deleted. In every other respect the two contracts were identical. Both contracts contained a provision giving the purchaser 30 days to decide, after making economic studies of the property, whether to proceed with the purchase.

After Norris received the Beavers contract, he sent a copy to Associates. Associates first took the position that the Beavers contract had not been submitted on time. On July 28, 1980, fearing that Associates would file suit against him if he accepted the Beavers contract, Norris notified Beavers that he was "rejecting" its contract. A few days later, Norris also "rejected" the Associates contract. Norris based both rejections on paragraph 16(a) of the Beavers lease.

Following the rejection of its contract, Beavers filed suit against Norris and Associates. Beavers sought an order from the court declaring: (1) that it properly exercised its right of first refusal under the lease with Norris; (2) that Norris had legally barred himself from removing his real property from the market by binding himself to sell the property pursuant to the Associates contract; and (3) that Beavers is

entitled to purchase Norris' property pursuant to the contract tendered to Norris on July 3, 1980. In an amended complaint, Beavers also sought damages from defendant Associates for wrongful interference with contractual rights. In a cross-claim against Norris, Associates sought specific performance of its contract with Norris.

Norris filed motions to dismiss both the initial complaint and the first amended complaint.

On February 18, 1981, the trial court denied the first motion to dismiss. No action was taken by the trial court with respect to the second motion to dismiss.

Thereafter, each of the parties filed motions for summary judgment. On November 1, 1982, the trial court ruled: (1) that the contract submitted by Beavers to Norris was a binding contract and was for the same price and terms as the Associates contract; (2) that as between Beavers and Associates, Beavers had the superior right to purchase Norris' property; and (3) after first holding that Norris was obligated to sell either to Beavers or to Associates, that Norris was entitled to reject both the Beavers and the Associates contracts and that he had done so. The court thereupon entered summary judgment in Norris' favor against Beavers on its claim and against Associates on its cross-claim for specific performance of its contract. The court also entered judgment in Associates' favor against Beavers. This appeal of the summary judgment followed.

■ The trial court did not err when it found that Beavers submitted to Norris a binding contract with terms virtually identical to those in the Associates contract. A review of the two contracts reveals that they are identical in all material respects. Associates contends that Beavers' contract is not binding because it contained a provision allowing Beavers 30 days in which to make an economic feasibility study and permitting its withdrawal if the study yielded unsatisfactory results. In Associates view, such a condition allowed Beavers to unilat-

erally withdraw, making its promise illusory. However, this condition is analogous both to engineering and architectural feasibility studies and to approval clauses upheld in this court and elsewhere. *See Edmund J. Flynn Company v. Schlosser,* 265 A.2d 599 (D.C.1970); *Mattei v. Hopper,* 51 Cal.2d 119, 330 P.2d 625 (1958); *Omni Group, Inc. v. Seattle-First National Bank,* 32 Wash.App. 22, 645 P.2d 727 (1982). That the condition might require the exercise of good faith does not render the contract in which the condition is found illusory. Therefore, the trial court did not err when it ruled that Beavers submitted a contract identical to Associates' and binding upon Beavers.

■ However, the trial court did err by ruling that paragraph 16(a) of Beavers' lease permitted Norris to unilaterally withdraw from both contracts. It is plain from the language of paragraph 16(a), that the parties contemplated a distinction between *offers* and executed, binding *contracts*. Norris was free to reject any and all *offers* until he actually executed a binding *contract*. Once he executed a contract, however, he was obliged to sell. In this case Norris executed a binding contract with Associates.* At that point he could no longer refuse to sell the property.

■ Further, the trial court erred when it failed to order Norris to convey the property under dispute to Beavers. Under the terms of the lease held by Beavers there were three conditions obligating Norris to sell his property to Beavers: (1) Norris must receive an offer acceptable to him and communicate it to Beavers; (2) Beavers must submit a binding contract at the same price and upon the same terms within 30 days of the notification; and (3) Norris must execute a binding contract to sell. All three of these conditions were met in this case. Thus, the trial court erred when it failed to order the property conveyed to Beavers.

*Reversed and remanded.*

* Associates takes the position that while the Beavers contract was non-binding and thus illusory, their own contract was effective. Associates maintains that its contract, while not binding when submitted, became so when Associates removed the condition fatal in Beavers' case. There are several difficulties with these arguments. First, the Beavers contract was not illusory and was, in fact, binding. Even if it were not, however, Associates' alternative position is untenable. Associates' contract was binding when it was submitted and if it was not, it did not become so when the condition was removed. It is a well established contract principle that one cannot create an enforceable contract by waiving the condition which renders the promise illusory. *Omni Group, supra* at 729.

Moreover, even if Associates waived the condition, it submitted in effect a new contract of which Beavers was entitled to notice and the renewed opportunity to meet the new contract. Beavers received no notice of the change in the Associates contract until two years later. Under none of these scenarios, then, would Associates have a right to purchase superior to Beavers'.