# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 75524-2-I |
| | ) | |
| NELLY Y. CAIRO, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RONALD CAIRO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: January 16, 2018 |
| | ) | |

VERELLEN, C.J. — In dissolution proceedings, trial courts must determine the separate or community character of marital property and make a just and equitable distribution of that property. Ronald Cairo contends the trial court mischaracterized property his wife inherited during their marriage and, as a result, inequitably divided the marital property. We disagree and affirm.

## FACTS

Nelly and Ronald Cairo married in 1985 and separated in 2014. Nelly petitioned to dissolve the marriage, and the matter proceeded to trial. The court later entered a decree of dissolution and findings of fact and conclusions of law. The court found as follows:

1.     The Petitioner, Nelly Cairo, is 80 years old. The Respondent Ronald Cairo is 58 years old. . . . This is a thirty to thirty-one year marriage.

. . . .

3.     The court, in dividing the property in this case is guided by the case In re Marriage of Rockwell, 141 Wn. App. 235 (2007). That case has facts very similar to the facts in this case. In Rockwell, the court established the principal that when you are dividing property, the court should look at the nature and extent of the community property, the nature and extent of separate property, the duration of the marriage and the economic circumstances of each spouse at the time of division of property. The court must make a just and equitable distribution of the property which can result in a disparity or differential distribution of the property.

4.     Here, with respect to the division of assets and debts, the court is facing a classic Rockwell scenario. The factors that favor this for Ms. Cairo is the fact that she is 80 years old. She has hearing issues, health issues and memory issues. Nelly Cairo has not worked during the course of the marriage and she does not have prospects for working at this time. She currently survives off maintenance and her small payment that she gets of $733 . . . from SSI and DSHS.

5.     Mr. Cairo is 57 years old. He has a job as a truck driver for a U.S. Mail subcontractor. He has worked all his life in this field. He has the ability to earn income and has a small IRA . . . . Throughout the course of the marriage, he was the sole economic support for the family.

. . . .

7.     The court . . . makes the following findings:

> 1.     Wife inherited the property in Lima Peru. That property has been in her name since 1990s. The Husband claims that the property . . . was a community asset by virtue that he built it up some and he is entitled to an equitable offset of some sort. His testimony was that he helped pay off the property by buying out the rest of the heirs to the tune of $20,000 some time between 1994 and 1998. Husband also claimed that he paid $200 a year in taxes on the property and that he

worked at least for one of the heirs for at least 90-days in order to purchase the property. The evidence regarding this is also that he indicated that he did this out of his love for his wife.

2. The Lima, Peru property is the Wife's separate property by inheritance. There is no authority to provide Husband an offset because the Wife provided him companionship and housekeeping, which has a value. Therefore, the Lima, Peru home is Wife's separate property. . . .

. . . .

21. In determining the . . . spousal maintenance, the court looked at the home in Lima, Peru as an asset available for her support. Whether she sells it or not, is her choice but it will not be used as leverage against the Husband's maintenance. The value of the Lima property is roughly $500 per month if the property was sold for $60,000 and available to her for a 10-year period.

22. The court finds that this division of property is fair and equitable and places the parties basically on an equal level.[1]

Ronald appeals.

## ANALYSIS

Ronald contends the trial court mischaracterized the Peru property and, consequently, inequitably divided the marital property. We review a trial court's characterization of property de novo.[2] We review the findings underlying its characterization for substantial evidence[3] and treat unchallenged findings as verities.[4] A trial court's division of marital property will be reversed only for

---

[1] Clerk's Papers (CP) at 14-16 (emphasis added).

[2] In re Marriage of Skarbek, 100 Wn. App. 444, 447, 997 P.2d 447 (2000).

[3] Id.

[4] In re Marriage of Brewer, 137 Wn.2d 756, 766, 976 P.2d 102 (1999).

manifest abuse of discretion.[5] For the reasons set forth below, we conclude Ronald fails to demonstrate error in the trial court's characterization and division of the parties' property.

"The character of property, whether separate or community, is determined at the time of acquisition."[6] Property acquired during marriage is presumptively community property.[7] This presumption "is rebuttable by establishing that the acquisition fits within a separate property provision."[8] Property acquired during marriage by gift or inheritance is separate property.[9] "Once the separate character of property is established, a presumption arises that it remained separate property."[10] A party seeking to rebut a presumption of either community or separate property must do so with clear and convincing evidence.[11]

Ronald's principal argument on appeal is that the trial court erred in characterizing the Peru property as Nelly's separate property. He contends the court failed to apply the presumption that property acquired during marriage is

---

[5] In re Marriage of Zier, 136 Wn. App. 40, 45, 147 P.3d 624 (2006).

[6] In re Marriage of Schwarz, 192 Wn. App. 180, 189, 368 P.3d 173 (2016).

[7] Id.

[8] In re Marriage of Short, 125 Wn.2d 865, 870, 890 P.2d 12 (1995).

[9] RCW 26.16.010; Short, 125 Wn.2d at 870-71; (property acquired after marriage by inheritance is separate property); Estate of Madsen v. Commissioner of Internal Revenue, 97 Wn.2d 792, 796, 650 P.2d 196 (1982, overruled on other grounds, Aetna Life Ins. Co. v. Wadsworth, 102 Wn.2d 652, 659, 689 P.2d 46 (1984).

[10] In re Estate of Borghi, 167 Wn.2d 480, 484, 219 P.3d 932 (2009).

[11] Id. at n.4.

presumed to be community property. But as noted above, property *inherited* during marriage is presumed to be separate property. The trial court found that "the Lima Peru Property . . . is Wife's inheritance and therefore her separate property."[12] Ronald does not dispute that Nelly inherited the Peru property. Accordingly, any community property presumption was rebutted by the undisputed fact that Nelly inherited the Peru property. Ronald argues, however, that he rebutted any separate property presumption with clear and convincing evidence of commingling after inheritance. He contends the Peru property became community property when he allegedly used community funds to pay taxes and maintenance on the property and to buy out other heirs. This contention fails for several reasons.

First, Ronald has not provided a sufficient record to determine whether he preserved this claim below.[13] Closing arguments were not transcribed, and Ronald has not filed a narrative or agreed report of proceedings.[14] The clerk's papers also contain nothing indicating Ronald preserved this contention below. To the contrary, the court's findings indicate that he sought an equitable offset for his alleged expenditures on the property but did not seek a recharacterization and division of Nelly's separate property interest. The court expressly denied Ronald's

---

[12] CP at 6.

[13] Story v. Shelter Bay Co., 52 Wn. App. 334, 345, 760 P.2d 368 (1988) (appellants have the burden of providing a sufficient record for review); RAP 2.5(a) (appellate court need not review claims raised for the first time on appeal).

[14] See RAP 9.3, 9.4.

request for an offset, stating "[t]here is no authority to provide Husband an offset because the Wife provided him companionship and housekeeping, which has a value."[15] Ronald does not assign error to that conclusion.

Second, Ronald's claim that "the [Peru] property became commingled by the use of community funds" is not persuasive.[16] Commingling of separate and community funds may give rise to a presumption that the commingled funds are community property.[17] But the presumption arises *only* when separate and community funds are "hopelessly commingled and cannot be separated."[18] The funds must be "so commingled that they may not be distinguished or apportioned."[19] Ronald's alleged payments were not commingled with other funds and were traceable to specific shares of the property or to expenditures that did not change the property's character.[20]

---

[15] CP at 14.

[16] Appellant's Br. at 18.

[17] Schwarz, 192 Wn. App. at 190.

[18] Skarbek, 100 Wn. App. at 448.

[19] Schwarz, 192 Wn. App. at 190 (quoting In re Marriage of Pearson-Maines, 70 Wn. App. 860, 866, 855 P.2d 1210 (1993)).

[20] Cf. Borghi, 167 Wn.2d at 491 n.7 (use of community founds to pay for improvements may give rise to an equitable lien, but such later actions do not change the property's character from separate to community).

Third, Ronald provided no receipts, bank statements, or other proof tracing his alleged payments on the property to particular funds. He thus failed to rebut the separate property presumption with clear cogent and convincing evidence.[21]

Finally, Ronald's claim requires findings the court did not make. Specifically, while the court entered findings summarizing Ronald's testimony regarding the alleged payments, it made no findings accepting or rejecting that testimony. There are no findings regarding the the credibility of the testimony or whether it amounted to the clear, cogent and convincing evidence necessary to rebut the separate property presumption. In the absence of findings on a material disputed issue, the trial court is deemed to have found against the party having the burden of proof.[22] Here, Ronald bore the burden of rebutting the separate property presumption. Accordingly, the absence of findings is deemed to be a finding against him.[23] Therefore, his theory that he used community funds to buy out other heirs, and to pay taxes and maintain the property fails.

Ronald concludes that "the Peruvian property should have been considered a part of the community property and thereby a part of the estate that was

---

[21] Morgan v. Briney, 200 Wn. App. 380, 390, 403 P.3d 86 (2017) (self-serving declarations were insufficient to rebut presumption of community property; party must trace payments to funds of a particular character "'with some degree of particularity'") (quoting Berol v. Berol, 37 Wn.2d 380, 382, 223 P.2d 1055 (1950)).

[22] Tate-Reynolds Co. v. Inland Metal Fabricators, Inc., 36 Wn. App. 146, 149, 672 P.2d 765 (1983).

[23] See Morgan, 200 Wn. App. at 390-91 (absence of finding that husband rebutted presumption of community property with clear and convincing evidence would be deemed a finding against him on that issue).

considered [and divided] by the trial court."[24] He claims that [i]n committing error by not properly characterizing the marital property, the court necessarily could not properly evaluate the distribution of the marital property."[25] Because Ronald has not demonstrated error in the court's property characterization, this contention fails.

Last, Ronald claims the trial court erred in ruling the Wells Fargo account containing $3,600 "was his separate property that required an offset in the division of the community property."[26] Ronald misinterprets the court's decision.

The court found:

> The Husband gets to keep the $3,600 he took for expenses at the beginning [of] the separation. In Washington State, as a community property state, when one party takes community assets there is a right of reimbursement to the other side. *One way of dealing with this is simply to say that the Husband gets to keep that money especially when there are small dollars involved. That is what the court is doing here and Husband is awarded that $3,600 which he has already received.*[27]

Nelly maintains that she sought half of the Wells Fargo account "as her share of that community bank account," but "[t]he court simply declined to give any of that money to [her] . . . because these were 'small dollars.'"[28] Nelly's interpretation of the court's decision is supported by the plain language of the finding, and Ronald does not dispute her interpretation in his reply brief.

---

[24] Appellant's Reply Br. at 2.

[25] Id. at 8.

[26] Appellant's Br. at 2.

[27] CP at 14 (emphasis added).

[28] Resp't's Br. at 9-10.

Nelly requests attorney's fees and costs based on her need and Ronald's ability to pay.[29] We conclude the parties will bear their own fees and costs on appeal.

Affirmed.

WE CONCUR:

---

[29] RCW 26.09.140.