# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| VIRTUAL INVESTMENTS-VIP, LLC,<br><br>Appellant,<br><br>v.<br><br>CAROL BAKER; MICHAEL BAKER; CAROL BAKER REAL ESTATE, INC.; and ASSET COMMERCIAL LENDING, LLC,<br><br>Respondents. | No. 84542-0-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BIRK, J. — This case involves a dispute over a "finder's fee" payment that Virtual Investments-VIP LLC[1] (VIP) alleges Carol Baker owed under an agreement that VIP would assist in securing financing to purchase real estate. The trial court found that VIP's entitlement to the finder's fee never arose because the loan process was never completed. Thus, the trial court found in effect that a condition precedent to the payment of the finder's fee never occurred. Because this finding is supported by substantial evidence, we affirm.

---

[1] The record contains multiple names for the appellant, "Virtual Investments-VIP LLC," "Virtual Investments Properties-VIP LLC," "Virtual Investment Properties LLC," and "VIP LLC." We refer to them collectively as "VIP."

I[2]

This case concerns a dispute over a property on Mulholland Drive in Los Angeles, California. Farnaz Khavari owned the property. On July 31, 2020, Khavari and VIP executed a "Finder's Fee Agreement." This document purported to require Khavari to remit a payment of $900,000.00 to VIP as a principal finder's fee for the procurement of "an Investor/Buyer(s)" to purchase the property. The document required VIP to secure a purchase price for the property of at least $7,975,000.00. Within 24 hours of acceptance of this document, Khavari was required to deposit $100,000.00 in escrow. A signer identified as "Gabrielle Ng" signed on behalf of VIP. At trial, Gabrielle Nguyen identified herself as such and testified she also is known as Gabrielle Ng among other names.

Cassandra Easley, at the time an interested buyer, saw the property advertised on a website and contacted the person listed on the advertisement, Nguyen. They discussed their belief the property could be purchased for about $8 million, but it was appraised at $13 million. Nguyen is VIP's corporate representative. Nguyen informed Easley that she could have the appraisal upon deposit of the earnest money. Following additional communications between Nguyen and Easley, Easley made an offer to Khavari through her company, Asset Commercial Lending LLC (ACL). On August 7, 2020, Easley and Khavari signed

---

[2] The substantive facts in this opinion are drawn from the trial testimony and the trial court's unchallenged findings of fact. Unchallenged findings of fact are accepted as true on appeal. Tedford v. Guy, 13 Wn. App. 2d 1, 12, 462 P.3d 869 (2020). While neither party designated the trial exhibits for our review, the parties seem to agree that at least some of the trial exhibits relevant to this appeal appear in the clerk's papers.

a purchase and sale agreement. The purchase price of the property totaled $8,015,000.00 and required a $150,000.00 earnest money deposit.

On or about August 13, 2020, ACL entered into "a complicated contract" with Carol Baker Real Estate, Inc., Baker's company, having "several unique clauses." In a copy of the document ostensibly appearing in the clerk's papers, Baker agreed to "assume and accept all rights, title and interest to that certain real estate (the 'Contract') concerning the real estate property" at the Mulholland address "for a purchase price of $13,000,000.00," with the difference between that and the original purchase price identified as an " 'Assignment Fee' " of $4,985,000.00 due to ACL out of escrow at closing. In the assignment contract, among other "finder's fees," Baker further agreed that "[f]or the work associated with finding the asset and securing the financing, [Baker] agrees to pay a Finders Fee to [VIP] in the amount of $1,200,000.00 from the Assignment Fee." The same day that Baker signed the assignment contract purporting to agree to purchase the property for $13 million and pay nearly $5 million in third-party "finders fees," Baker and her husband, who was listed as "retired," completed a loan application disclosing combined monthly income of $20,505.00 and total net worth of approximately $2.7 million.

All of these documents were prepared by Nguyen. Baker had serious concerns about the arrangement, believed it may have been illegal, and did not trust Nguyen. Baker's husband, Michael Baker, also advised against signing the contracts. But after several reassurances from Easley, Baker decided to proceed and signed the assignment contract.

3

In the Bakers' loan application, they applied for a loan of $11,050,000.00 with an interest rate of 5 percent over 24 months. A three paragraph addendum is present on the last page of this document. There, Baker and ACL agreed to "compensate [VIP] a Finder's Fee to procure their Loan through its Contact of Private money in the amount of [$1,200,000.00], paid at Close of Escrow." The document further stated, "In the event Borrower fails to complete the loan process and sign their loan documents at escrow from the Lender, Borrower agrees to render payment to VIP, LLC within 30-calendar days." "Borrower agrees to pay all reasonable attorney fees should VIP, LLC seek assistance of an attorney. In the event Lender fails to complete the loan and funding not payment is due to VIP, LLC." "Gabrielle Ng" and VIP are listed as the loan originator and loan originator company. The document stated that "[j]urisdiction is agreed upon in the State of Washington, King County," the location of Nguyen's residence on Mercer Island, Washington.

Nguyen informed Baker that the loan application was denied, causing Baker to refuse to go forward in the transaction. Baker felt pressured and harassed by Nguyen's repeated attempts to get Baker to proceed faster with the transaction, which led Baker to ask Easley to tell Nguyen to cease contact with her. The property sale never materialized. Easley was not successful in finding another buyer to receive an "assignment" of her purchase and sale agreement, because "other buyers required the same thing that Ms. Baker required and the previous buyer required, which was to inspect the property and to be able to get their own appraisals, which we were not able to do."

4

The trial court admitted a, "NSB Investor 14 letter of intent," which stated, "[P]lease be advised that Carol Baker Real Estate, Inc. has been approved for acquisition assumable loan with NSB Investors in the amount of $11.05 million." The letter said, " '[T]his proposal constitutes only a general nonbinding expression on interest on the part of lender. In addition to the terms and conditions above, this proposal is subject to lender's credit, legal, and investment approval process and is not intended to and does not create a legally binding commitment or obligation on part of lender.' " Nguyen testified she received the letter of intent on August 14, 2020, and sent it to Baker, but Baker never signed it. Baker testified she never saw the letter before trial.

On February 26, 2021, VIP filed a summons and complaint against the Bakers, Carol Baker Real Estate, and ACL, alleging breach of contract for failing to pay VIP a finder's fee. VIP claimed compensation for serving as "finder" in the amount of $2,100,000.00, apparently the combined total of the $900,000.00 in finder's fees it was supposed to receive from the seller, and the $1,200,000.00 in finder's fees it was supposed to receive from Baker as assignee of the buyer. In an amended complaint, VIP alleged breach of contract against all defendants arising out of the loan application addendum and breach of contract against Carol Baker Real Estate based on the finder's fee agreement referenced in the purchase agreement. The defendants filed their answer, cross-complaint, and counterclaims, alleging breach of contract in good faith and fair dealing, violations of the Consumer Protection Act, chapter 19.86 RCW, and declaratory relief against VIP and interpleader defendants, including Khavari and Home Smart Evergreen

5

Realty. On March 3, 2022, the trial court entered a stipulated entry of judgment, dismissing the interpleader defendants from the case, after those parties reached a settlement. The remaining claims between VIP, Baker, and ACL proceeded to trial. Easley, Carol Baker, Nguyen, and Farzad Kasrabod testified.

On September 2, 2022, the trial court issued oral findings of fact and conclusions of law and entered its written order, on October 17, 2022, incorporating its oral ruling. The court found the three paragraph addendum to the Bakers' loan application was a third-party beneficiary contract. And this addendum constituted the basis for VIP's lawsuit. The court found the letter of intent did not constitute a "legally binding offer," but merely "an expression of interest" that did not obligate Easley and Baker to continue with the transaction. The court found VIP was a third party beneficiary of the loan agreement, entitled to payment if the Bakers' loan was approved, which never happened. Therefore, "[t]he agreement for the defendants in this case to pay the plaintiff in this case never materialized." The trial court alternately found the addendum was not sufficiently specific to form a contract, saying it was too unclear to support an obligation to pay VIP to the extent it required payment "[i]n the event Borrower fails to complete the loan process and sign their loan documents at escrow from the Lender." Additionally, VIP never signed the residential loan application. The trial court further found that if there had been a contract, it was terminated when Baker refused to proceed based on Nguyen's representation that the loan was not approved. The trial court found Nguyen acted as a real estate agent under Washington and California law, a broker, a lender, and handled all the communications between Easley and Baker.

6

The court found a "lack of credibility" on "Ms. Nguyen's part." The trial court found for the defendants on VIP's claims and for VIP on the defendants' counterclaims and claim for attorney fees. VIP appeals.

II

VIP argues the trial court's findings of fact did not support its legal conclusion that there was no enforceable contract. We disagree.

We review a trial court's decision following a bench trial by asking whether substantial evidence supports the trial court's findings of fact and whether those findings support the trial court's conclusions of law. Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). Substantial evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true. Id. The application of the law to the facts is a question of law we review de novo. Id. Contract interpretation is a question of law when the interpretation does not depend on the use of extrinsic evidence. Id. at 711. Accordingly, we review a trial court's conclusions of law pertaining to contract interpretation de novo. Id. at 712. If findings of fact are mischaracterized as conclusions of law, we analyze them as findings of fact. Real Carriage Door Co., ex rel. Rees v. Rees, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021).

The legal effect of a contract is a matter of law that this court reviews de novo. Keystone Masonry, Inc. v. Garco Constr., Inc., 135 Wn. App. 927, 932, 147 P.3d 610 (2006). This includes whether a contract provision creates a condition precedent. See Tacoma Northpark, LLC v. NW, LLC, 123 Wn. App. 73, 80, 96 P.3d 454 (2004) " 'Conditions precedent' are 'those facts and events, occurring

7

subsequently to the making of a valid contract, that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty, before the usual judicial remedies are available.' " Id. at 79 (quoting Ross v. Harding, 64 Wn.2d 231, 236, 391 P.2d 526 (1964)). Whether a contract provision is a condition precedent or a contractual obligation depends on the intent of the parties. Id. at 80. If the condition does not occur, the parties are excused from performance. U.S. Bank Nat'l Ass'n v. Roosild, 17 Wn. App. 2d 589, 599, 487 P.3d 212 (2021). Whether a contract provision is a condition precedent or a contractual promise depends on the intent of the parties, to be determined from a fair and reasonable construction of the language used in light of all the surrounding circumstances. Id. Whether a condition precedent has been satisfied may depend on a question of fact. See e.g., Frank Coluccio Constr. Co. v. King County, 136 Wn. App. 751, 767-68, 770, 150 P.3d 1147 (2007) (stating that the test for determining whether a loss is "fortuitous," which is a condition precedent to coverage under an all risk builders' risk insurance plan, is a subjective, not objective, one and involves questions of fact.); Omni Grp., Inc. v. Seattle-First Nat'l Bank, 32 Wn. App. 22, 25-26, 645 P.2d 727 (1982) (noting that where a property's feasibility report must be "satisfactory" to trigger a duty to buy the property, whether the promisor was actually satisfied or should have reasonably been satisfied is a question of fact).

The trial court found in effect that a condition precedent to Baker owing VIP a "finder's fee" was that VIP obtain a legally binding commitment by a lender to extend Baker financing to buy the property, but the trial evidence did not show that

8

this occurred. This is the appropriate characterization of the contractual terms entitling VIP to compensation for its services to "procure their Loan" and "securing the financing," together with other language, noted below, suggesting that VIP would not be entitled to payment if a lender did not complete a loan. The finding that this never occurred is supported by substantial evidence. The Bakers submitted a loan application. Approval of the loan was declined. Easley testified that Nguyen represented that the loan was declined. And by its plain language, the letter of intent never became a binding loan agreement.

To the extent VIP contended the contract entitled it to a $1.2 million finder's fee in the absence of its obtaining a legally binding commitment by a lender, the agreement's terms were too uncertain to constitute an enforceable obligation to that effect. "An enforceable contract requires, among other things, an offer with reasonably certain terms." Andrus v. Dep't of Transp., 128 Wn. App. 895, 898, 117 P.3d 1152 (2005) (emphasis omitted). If a term is "so indefinite that a court cannot decide just what it means, and fix exactly the legal liability of the parties," there cannot be an enforceable agreement. See Sandeman v. Sayres, 50 Wn.2d 539, 541, 314 P.2d 428 (1957). "If the essential terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract." RESTATEMENT (SECOND) OF CONTRACTS § 33 cmt. a at 92 (AM. L. INST. 1981). The trial court deemed "too unclear" or "too imprecise" the language purporting to require payment "[i]n the event Borrower fails to complete the loan process and sign their loan documents at escrow from the Lender." In combination, this clause and the additional language that "[i]n the event Lender

fails to complete the loan and funding not payment is due to VIP, LLC," are insufficiently definite. We affirm the trial court's judgment that VIP failed to establish breach of contract by Baker and ACL.

III

Baker and ACL argue that they should be awarded attorney fees as sanctions in the trial court and before this court under RAP 18.9(a), because of VIP's alleged misconduct and the trial court findings that VIP engaged in an elaborate sham designed to unlawfully take Baker's money. Baker and ACL claim VIP's appeal is frivolous and devoid of merit with no possibility of reversal. We disagree.

"We will award attorney fees to the prevailing party 'only on the basis of a private agreement, a statute, or a recognized ground of equity.' " Buck Mountain Owner's Ass'n v. Prestwich, 174 Wn. App. 702, 731, 308 P.3d 644 (2013) (quoting Equitable Life Leasing Corp. v. Cedarbrook, Inc., 52 Wn. App. 497, 506, 761 P.2d 77 (1988)). Under RAP 18.9(a), a party is subject to sanctions for filing a frivolous appeal or failing to comply with the rules of appellate procedure. " 'Appropriate sanctions may include, as compensatory damages, an award of attorney fees and costs to the opposing party.' " Kinney v. Cook, 150 Wn. App. 187, 195, 208 P.3d 1 (2009) (quoting Yurtis v. Phipps, 143 Wn. App. 680, 696, 181 P.3d 849 (2008)). " '[A]n appeal is frivolous if it raised no debatable issues on which reasonable minds might differ and it is so totally devoid of merit that no reasonable possibility of reversal exists.' " Hanna v. Margitan, 193 Wn. App. 596, 615, 373 P.3d 300 (2016) (alteration in original) (quoting Protect the Peninsula's Future v. City of Port

10

<u>Angeles</u>, 175 Wn. App. 201, 220, 304 P.3d 914 (2013)). " 'An appeal that is affirmed merely because the arguments are rejected is not frivolous.' " <u>Kinney</u>, 150 Wn. App. at 195-96 (quoting <u>Halvorsen v. Ferguson</u>, 46 Wn. App. 708, 723, 735 P.2d 675 (1986)). In determining whether an appeal is frivolous, we consider the record as a whole and resolve all doubt in favor of the appellant. <u>Skinner v. Holgate</u>, 141 Wn. App. 840, 858, 173 P.3d 300 (2007).

On the same grounds, Baker and ACL appear to challenge the trial court's decision to deny attorney fees. This court "appl[ies] a two-part standard of review to a trial court's award or denial of attorney fees." <u>Falcon Props., LLC v. Bowfits 1308, LLC</u>, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). First, "we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity." <u>Id.</u> Second, "we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fees award for an abuse of discretion." <u>Id.</u> A court abuses its discretion when its decision is manifestly unreasonable, based on untenable grounds, or based on untenable reasons. <u>Gildon v. Simon Prop. Grp., Inc.</u>, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006).

Resolving all doubts in favor of VIP, its appeal does not meet the legal standard of frivolousness justifying an award of attorney fees. Likewise, the trial court did not abuse its discretion in determining that defendants were not entitled to an award of attorney fees. While the trial court found Nguyen not credible and the loan application addendum "tantamount to a sham transaction," the court denied Baker and ACL's Consumer Protection Act cross claim and denied a motion to refer Nguyen for criminal prosecution. We deny respondents' request for

reasonable attorney fees and expenses, but they shall recover costs as prevailing parties pursuant to RAP 14.2.

Affirmed.

_Birk, J._

WE CONCUR:

_Chung, J._          _Mann, J._