[No. 8819-0-I.  Division One.  September 14, 1981.]

THE STATE OF WASHINGTON, *Respondent*, v. JULIE LYNN BROWN, *Appellant*.

*Robert Boruchowitz* and *Janet Ainsworth* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Howard Todd, Deputy,* for respondent.

DURHAM, J.—Defendant Julie Lynn Brown, b.d. 7/6/63, appeals an order finding her to be a juvenile offender guilty of prostitution loitering and obstructing a public servant, in violation of former Seattle City Code 12A.12.020(2), now recodified as Seattle Municipal Code 12A.10.010(B), and

RCW 9A.76.020(3).

Seattle Police Officer Tim Dillon testified that at 9:15 p.m. on January 15, 1980, he observed the defendant, whom he had previously arrested for prostitution, in the 400 block of Pike Street, an area of high prostitution activity. Brown was walking slowly, turning and looking into vehicles occupied by males, but turning away from vehicles occupied by females. As she walked up 5th Avenue toward University Street, she smiled at an older man in a silver Mazda whom Dillon recognized as one who frequents the area to pick up girls. A few minutes later, Dillon observed the defendant talk briefly with a male pedestrian. At 6th and University, she smiled to another male pedestrian. From a distance of about 4 to 5 feet, Dillon overheard the man say, "my place."

As Dillon radioed for assistance, Brown turned around, appeared shocked, and ran across the street against a "don't walk" sign. Dillon took chase, yelling at her to stop, that he wanted to talk with her, and that she was under arrest. As Brown ran, she called out to passersby, "stop him, stop him." Dillon grabbed her by her leather coat, but she "shrugged and pulled" and he lost his grasp. The second time Dillon grabbed her, he knocked her to the ground.

After the defendant was in custody, Dillon asked her if she was working for her boyfriend, and she responded that she was working for herself that night. Later Brown asked Dillon how she could be charged with prostitution loitering; he replied because they both knew that she was working that night, and she stated, "Yeah, but you can't prove it."

Inside Brown's purse was an address book containing male first names and telephone numbers without addresses. Most of the telephone numbers checked out to be business telephone numbers rather than residences. The purse also contained several men's business cards and a packet of condoms. Certified copies of Brown's two prior convictions for prostitution were admitted into evidence over defense objections.

Brown testified that she had been trying to get from one

bus to another, and had smiled at the man in the silver Mazda because he had smiled at her. She spoke to one man who asked her for change for a bus. She was not walking with, nor had she engaged in conversation with, the man who was nearby when she encountered Dillon. She was waiting to cross the street when she heard Dillon, whom she did not recognize, radio for assistance. She denied saying anything to Dillon about working for herself that night.

■ On appeal, Brown raises two issues pertaining to the admissibility of her prior convictions for prostitution. She first contends that they constituted inadmissible "bad character" evidence. We disagree. Although ER 404(b) proscribes the use of such evidence to prove character, it provides that such evidence "may, however, be admissible for other purposes, such as proof of . . . intent". The State offered this evidence for the express purpose of proving the defendant's intent. Evidence of a prior prostitution conviction is a circumstance which may tend to prove purpose or intent in a prostitution loitering case. *Seattle v. Jones,* 79 Wn.2d 626, 488 P.2d 750 (1971). *See also State. v. Goebel,* 36 Wn.2d 367, 218 P.2d 300 (1950).

■ Brown also argues that because her prior convictions were based upon guilty pleas, the State should not have been allowed to use them against her unless they were shown to be constitutionally valid. She relies upon *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), which held that once the issue is raised by the defendant, the State has the burden of proving the constitutionality of prior guilty pleas beyond a reasonable doubt before they can be used in habitual criminal proceedings. *Holsworth,* however, does not apply to the present use of a prior conviction for a collateral matter, *e.g.,* impeachment purposes. *State v. Thompson,* 95 Wn.2d 888, 632 P.2d 50 (1981). The use of Brown's prior prostitution convictions to prove her intent to commit prostitution loitering was indeed collateral. The State, thus, had no burden of proving that her prior convictions were constitutionally valid.

■ Brown also challenges the sufficiency of the evidence

supporting her convictions. Evidence is sufficient if

> after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Italics omitted.) *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980), quoting from *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979).

Brown argues that there was insufficient evidence of criminal intent to sustain her prostitution loitering conviction. The ordinance under which she was charged provides:

> A person is guilty of prostitution loitering if he remains in a public place and intentionally solicits, induces, entices, or procures another to commit prostitution.

Seattle Municipal Code 12A.10.010(B). The next section of the ordinance provides:

> Among the circumstances which may be considered in determining whether the actor intends such prohibited conduct are that he:
> 1. Repeatedly beckons to, stops or attempts to stop, or engages passersby in conversation; or
> 2. Repeatedly stops or attempts to stop motor vehicle operators by hailing, waving of arms or any other bodily gesture; or
> 3. Is a known prostitute or panderer.

Seattle Municipal Code 12A.10.010(C). Brown argues that her actions did not fit into any of these three categories, particularly "known prostitute or panderer."

We agree that Brown could not have been a "known prostitute or panderer" within the meaning of the ordinance because her prior convictions were not from Seattle Municipal Court.[1] However, it is significant that the ordi-

---

[1]The ordinance defines a "known prostitute or panderer" as: "[A] person who within one year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted in *Seattle Municipal Court* of an offense involving prostitution." (Italics ours.) Seattle Municipal Code 12A.10.010(A)(2). Brown's prior convictions were obtained in the juvenile department of superior court.

nance does not limit evidence of intent to the three categories it specifies, but broadly describes those categories as "[a]mong the circumstances which may be considered". Seattle Municipal Code 12A.10.010(C). Brown's prior prostitution convictions furnished adequate evidence of her criminal intent. The remainder of the evidence against her is sufficient to support her conviction. *See State v. Green, supra.*

■ With respect to Brown's conviction for obstructing a public servant, she argues that an essential element of the offense is missing because Officer Dillon was not "acting lawfully" in arresting her for prostitution loitering. Her argument is based upon the language of Seattle Municipal Code 12A.20.020, under which she was not charged. Brown was charged and convicted under RCW 9A.76.020(3), which provides:

> Every person who, . . . (3) shall knowingly hinder, delay, or obstruct any public servant in the discharge of his official powers or duties; shall be guilty of a misdemeanor.

Officer Dillon was attempting to conduct an investigative stop within the meaning of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). Brown's hinderance of his investigation was knowing. Even though Dillon was apparently wearing plain clothes, the evidence shows that Brown knew who he was because she had previously identified him by name. We conclude that this conviction is also supported by sufficient evidence.

Finally, in reviewing the sufficiency of the evidence for both convictions, we necessarily examined the trial court's findings of fact. JuCR 7.11(c) provides:

> The juvenile shall be found guilty or not guilty. The court shall record its findings of fact and enter its decision on the record. The findings shall include the evidence relied upon by the court in reaching its decision.

*See also* RCW 13.40.130(4). Written findings are no longer necessary because oral statements and findings are now part of the record. Patrick & Jensen, *Changes in Rights*

*and Procedures in Juvenile Offense Proceedings,* 14 Gonz. L. Rev. 313, 329 (1979). It is still imperative, however, for the findings of fact in a juvenile adjudicatory hearing to include the evidence upon which the court relied in reaching its decision.

In the present case, the trial court's findings were conclusory at best. Its written findings merely recited the elements of the offenses of which Brown was convicted. The court's oral opinion was simply: "There isn't [a] question in my mind that comes under the City Code and the Statute. Guilty on both counts." Thus, neither the oral opinion nor the written findings identified which evidence the court found persuasive.

▮ Although this matter was not raised by the parties, we believe it must be considered to properly decide the case. RAP 12.1(b). We recognize that juvenile court is a highly active court. We also note that the printed forms often used for these hearings, such as the one used by the trial court in this case, encourage brevity by providing only two lines for specifying the evidence relied upon. Nevertheless, both JuCR 7.11(c) and RCW 13.40.130(4) impose a requirement that cannot be ignored. Even though a few sentences may suffice, they must contain the evidence upon which the court relied for the findings to comply with JuCR 7.11(c).

We believe the merits of this case and the interest of justice require the case to be remanded to the trial court for the entry of additional findings. RAP 12.2. In all other respects, the trial court's decision is affirmed.

RINGOLD, A.C.J., and SWANSON, J., concur.

Reconsideration denied October 12, 1981.

Review denied by Supreme Court December 3, 1981.