[No. 12608-3-I.   Division One.   July 23, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. DARNELL COMMODORE, *Appellant.*

*Elizabeth K. Selleck* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Greg Hubbard, Deputy,* for respondent.

DURHAM, C.J.—Darnell Commodore appeals his conviction in juvenile court of first degree murder, alleging that there was insufficient evidence of premeditation. He also asserts that the trial court confused the element of premeditation with the element of intent, and entered inadequate findings of fact.

During the evening of August 20, 1982, and the early morning of August 21, a party was held at the Commodore home. After several hours, Commodore began arguing with one of the guests, Frankie Cavazos, over a small amount of drugs. The argument took place in the downstairs area of the house, and reconvened on the upstairs porch shortly thereafter. When the argument subsided, Commodore went inside the house, closed the sliding glass door, and stood by listening. After 2 minutes, Commodore left the door, returned to the porch with a gun, and shot Cavazos in the head from a distance of about 3 feet. Commodore left the porch and headed for a nearby wooded area. Commodore returned shortly thereafter and was placed under arrest by Detective Earl Tripp of the King County Police Department.

There was drinking at the party, and Commodore had consumed several beers. Following the arrest, Detective Tripp noted that Commodore appeared very excited and that he kept asking if the victim had died. Although Detec-

tive Tripp noted that Commodore appeared intoxicated to some degree, he did not believe that the intoxication was substantial. Commodore appeared to be acting rationally, in that he specifically refused to waive his *Miranda* rights and to have his conversations taped. Commodore submitted to a Breathalyzer test at the precinct station. The officer who administered the test stated that Commodore appeared intoxicated, but that he could have simply been tired. Commodore did not slur his words or stagger.[1]

At trial, both the prosecution and defense characterized the central issue in terms of Commodore's ability to premeditate while under the influence of intoxicants. The defense theory was that Commodore was suffering from an alcohol–induced blackout at the time of the shooting. Patrick Paul, a drug abuse expert who conducted an alcohol evaluation of Commodore, testified that Commodore was suffering from such a blackout at the time of the shooting. Psychologist Elizabeth Hyde, who had also evaluated Commodore, testified that Commodore's inability to recall the incident could have been due to a genuine alcohol blackout or merely to repression of a traumatic experience. She further testified that she was not sure what Commodore's mental state was at the time of the shooting.

Following the closing arguments, the trial judge began his oral opinion by stating that he regarded the central issue in the case to be intent, not premeditation. In his view, if there was intent, then the intent was clearly premeditated given the facts of the case. The trial judge found Commodore guilty of first degree murder, setting forth his reasoning in the oral opinion. Findings of fact and conclusions of law were entered on April 14, 1983.

Commodore first argues that the trial court confused the separate elements of premeditation and intent. He contends that the court considered the intoxication defense

---

[1] Commodore's blood alcohol level when the test was administered was .17 percent. At the trial, a toxicologist testified that Commodore's blood alcohol level could have been .20 percent at the time of the shooting.

only with respect to the element of intent. According to Commodore, the court erroneously assumed that if his intoxication did not prevent him from forming the intent to kill, it also could not have affected his ability to premeditate. Thus, Commodore argues that the court effectively failed to consider the impact of his intoxication on the element of premeditation.

If Commodore's portrayal of the trial court's reasoning were accurate, we would be compelled to reverse. The State must prove each element of a charged offense beyond a reasonable doubt. *In re Winship,* 397 U.S 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). Premeditation is a distinct element of the crime of first degree murder.[2] *See State v. Brooks,* 97 Wn.2d 873, 876, 651 P.2d 217 (1982). While intent means only "'acting with the objective or purpose to accomplish a result which constitutes a crime", premeditation involves "the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short." *Brooks,* at 876. It is, therefore, possible for one to form an intent to kill that is not premeditated. *State v. Brooks, supra.* For this reason, premeditation cannot simply be inferred from the intent to kill. *State v. Williams,* 285 N.W.2d 248, 268 (Iowa 1979), *cert. denied,* 446 U.S. 921 (1980). Accordingly, although voluntary intoxication may negate either intent or premeditation, *Brooks,* at 874–75, a finding that intoxication did not prevent the defendant from forming the intent to kill does not itself establish that the intent was premeditated. *Brooks,* at 876. If the trial court refused to separately consider the effect of intoxication upon the defendant's capacity to premeditate, the State was, arguably, relieved of its burden to prove each element of first degree murder beyond a reasonable doubt.

---

[2]RCW 9A.32.030 states in pertinent part:

"*Murder in the first degree.* (1) A person is guilty of murder in the first degree when:

"(a) With a *premeditated* intent to cause the death of another person, he causes the death of such person . . ." (Italics ours.)

Here, the trial court began its oral opinion by formulating the issue as follows:

It has been argued that the prime question is, whether there was premeditation? It seems to me that the basic question is to whether there was in Darnell's mind that night, intent. *If he intended then the evidence is such that it is rather clearly premeditated.*

(Italics ours.)

This language does not indicate that the trial court believed that premeditation would necessarily be established by a showing that Commodore intended to kill. Rather, the court was simply expressing its view that the more difficult question to be decided was if Commodore intended to kill at all; once that was proved, evidence of premeditation was obvious.[3]

■ Commodore next argues that there was insufficient evidence to establish premeditation. The standard of review is if any rational trier of fact could have found premeditation beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 220, 616 P.2d 628 (1980). *State v. Russell,* 33 Wn. App. 579, 591, 657 P.2d 338 (1983), *aff'd in part, rev'd in part,* 101 Wn.2d 349, 678 P.2d 332 (1984). Such a finding easily could have been made here. The arguments between Commodore and Cavazos indicate that Commodore had a motive to kill. Moreover, Commodore's lingering behind the door, proceeding to a room where he knew he would find a gun, and returning to shoot Cavazos, suggest that Commodore engaged in planning activity. Both types of evidence have been recognized as permitting an inference of premeditation. *See* W. LaFave & A. Scott, *Criminal Law* § 73, at 564 (1972).

Commodore argues, however, that the evidence of intoxication was so overwhelming as to negate any possibility of premeditation. He is mistaken. As discussed earlier, the

---

[3]The court's characterization of the central issue is not surprising, in view of the fact that the evidence relating to Commodore's intoxication was used largely to support the theory that Commodore had completely blacked out at the time of the shooting and, thus, had no intent to kill.

expert testimony on this issue was inconclusive at best. The trier of fact could have easily found that Commodore's intoxication did not preclude him from premeditating.

Commodore next contends that the trial court entered inadequate findings of fact and conclusions of law,[4] because it failed to include a specific finding of premeditation. Findings of fact in cases tried before juvenile court are required by JuCR 7.11(c), which states:

> **Decision on the Record.** The juvenile shall be found guilty or not guilty. The court shall record its findings of fact and enter its decision on the record. The findings shall include the evidence relied upon by the court in reaching its decision.

*See also* RCW 13.40.130(4). In *State v. Brown,* 30 Wn. App. 344, 349, 633 P.2d 1351 (1981), we held that written findings are no longer necessary in juvenile cases because the court's oral statements and findings are now part of the record. *See* 4A L. Orland, Wash. Prac., *Rules Practice* § 7251 (3d ed. 1983); Patrick & Jensen, *Changes in Rights and Procedures in Juvenile Offense Proceedings,* 14 Gonz. L. Rev. 313, 329 (1979). Moreover, we held that the trial court is only required "to include the evidence upon which [it] relied in reaching its decision." *State v. Brown,* 30 Wn. App. 344, 350, 633 P.2d 1351 (1981). The trial court here complied with the rule as set forth in *Brown.* The written findings contain a recitation of the facts relied upon by the court in reaching its decision. Because the written findings mention the two arguments between Commodore and Cavazos, and Commodore's planning activity, they support a finding of premeditation under the *Green* standard.

Upon reflection, however, we have concluded that the better way in which to insure efficient and accurate

---

[4]Commodore argues that the appropriate remedy for such an error is reversal, not a remand, on the theory that the absence of a finding of fact on a material element of the crime should be interpreted as a negative finding against the State.

Even if we were to conclude that the findings were inadequate, vacation and remand is clearly the appropriate remedy. *See State v. Jones,* 34 Wn. App. 848, 851, 664 P.2d 12 (1983).

appellate review is to require written findings and conclusions in those juvenile cases which are appealed. We are aware of the burden this could create if applied to all cases decided by the heavily burdened juvenile court. Accordingly, we suggest that the prosecutor's office prepare the documents only after receipt of the notice of appeal, and then within 30 days.[5] Our holding in *State v. Brown,* therefore, is reversed insofar as it is inconsistent with this opinion.

In addition, we expect that the findings and conclusions prepared in accordance with this opinion shall comport with the standards set forth in *State v. Jones,* 34 Wn. App. 848, 664 P.2d 12 (1983). The findings must include a statement of ultimate facts as to each element of the crime, and shall include the evidence relied upon by the court in reaching its decision.

The judgment is affirmed.

ANDERSEN and CORBETT, JJ., concur.

Review denied by Supreme Court December 7, 1984.

---

[5]Where findings of fact and conclusions of law have not been entered prior to the filing of the notice of appeal, it is not necessary to seek this court's permission to enter such findings and conclusions under RAP 7.2(e) unless the motion requires or entails the acceptance of additional evidence that will affect the judgment in a substantive manner. *Olsen Media v. Energy Sciences, Inc.,* 32 Wn. App. 579, 588, 648 P.2d 493 (1982); RAP 7.2(e).