[No. 9411-8-II. Division Three. September 4, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. DENISE MARIE MYERS, *Appellant.*

*Rebecca K. Wright,* for appellant (appointed counsel for appeal).

*Patrick D. Sutherland, Prosecuting Attorney,* and *Teresa L. Jordan, Deputy,* for respondent.

McINTURFF, C.J.*—Denise Myers was convicted of two counts of first degree custodial interference. She appeals, contending the court erred in admitting evidence of noncriminal misconduct which occurred prior to the entry of the dissolution decree. We reverse and remand.

Lance Bussanich and Denise (Bussanich) Myers were divorced July 25, 1980; custody of their two minor children, Jesse and Jaynee, was awarded to Mr. Bussanich.

From 1981 to August 1984, reasonable visitation was exercised by Ms. Myers and no difficulties occurred. On June 23, 1984, Mr. Bussanich sent the children to their mother in Alaska for the summer with the understanding they be returned to him 2 weeks before school started in September. Because the children did not return as planned, an information was filed on October 17, 1984, charging Ms. Myers with custodial interference in the first degree, RCW

---

*This case was heard by a panel of Division Three judges sitting in Division Two.

9A.40.060.[1] Ms. Myers was arrested in Alaska August 19, 1985, and subsequently extradited to Washington in October for trial. A jury found her guilty of two counts of custodial interference; she was sentenced to 1 year of community service.

The dispositive issue is: Did the trial court err in admitting testimony concerning past noncriminal misconduct which occurred 4 years prior to the filing of the present information, contrary to ER 403 and 404(b)?[2]

The court granted Ms. Myers' motion in limine to disallow evidence of the past misconduct, at least for purposes of voir dire and opening statement. During trial, the court again denied the State's request to present the evidence because of undue prejudice. However, after a short recess and reconsideration of its ruling, the court allowed the evidence after determining the State had no other proof of

---

[1]RCW 9A.40.060(1) provides:

"A relative of a child under the age of eighteen . . . is guilty of custodial interference in the first degree if, with the intent to deny access to the child . . . by a parent . . . having a lawful right to physical custody of such person, the relative takes, entices, retains, detains, or conceals the child . . . from a parent . . . having a lawful right to physical custody of such person and:

"(a) Intends to hold the child . . . permanently or for a protracted period; or

"(b) Exposes the child . . . to a substantial risk of illness or physical injury; or

"(c) Causes the child . . . to be removed from the state of usual residence; or

"(d) Retains, detains, or conceals the child . . . in another state after expiration of any authorized visitation period with intent to intimidate or harass a parent . . . having lawful right to physical custody or to prevent a parent . . . with lawful right to physical custody from regaining custody."

[2]The prior acts of misconduct consisted of the following:

1. Two–week visitation during Christmas 1979 pursuant to temporary custody order by father with children in Juneau, Alaska, did not occur because Ms. Myers had, immediately prior, moved with the children to Hawaii.

2. Court ordered visitation by father in June 1980 with children in Hawaii did not occur. Mr. Bussanich arrived in Hawaii June 12, 1980; Ms. Myers and the children had left the day before.

3. Mr. Bussanich obtained permanent custody in July 1980. Arrangements with Ms. Myers to have the children flown from Hawaii to Washington state did not occur; airline tickets purchased by Mr. Bussanich were used to send the children to Alaska.

4. October 1980, the children were located in Fairbanks; the father immediately flew to Fairbanks, but the children had been moved by Ms. Myers.

Ms. Myers' intent, stating:

> When you look at prior bad acts or misconduct, the court is generally being asked to look at bad acts or misconduct or crimes that are unrelated to the crime that comes before the Court for determination by the jury. For instance, a person who is accused of a burglary, commits a burglary in the past and the State is trying to get that in to show that the person acted in conformity with their prior action, but is arguing that it should come in for proof of motive or intent, or whatever the State's allegation is at that time. But normally the State is trying to get in some unrelated activity or conduct. I think that the courts have been much more agreeable to letting in prior bad acts or conduct if in fact they are related to the same parties and the same transaction that comes before the Court for litigation in this particular crime.
>
> I am convinced now that the history of the relationship between the Defendant and the complaining witness and the children, who are the alleged victims in this matter, is important to show what the Defendant's intent may have been in retaining custody of those children during the period of time in which the State alleges that she had custody in contravention of the Court order, and the State should be allowed to present some limited testimony on what that historical relationship is between the parties and the custodial situation of the children.

Report of Proceedings, at 80–81. Additionally, the court submitted a limiting instruction cautioning the jury to use the evidence of misconduct only as it related to Ms. Myers' intent.[3] Whether the court erred is determined under an abuse of discretion test. *State v. Terrovona,* 105 Wn.2d 632, 649, 716 P.2d 295 (1986); *State v. Robtoy,* 98 Wn.2d 30, 42, 653 P.2d 284 (1982).

Ms. Myers argues the court's ruling which allowed the testimony was prejudicial, not probative, citing *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982); and that the

---

[3]Instruction 8 states:

"Evidence has been introduced in this case on the subject of the Defendant's prior actions with respect to custody and visitation orders. This evidence may be considered by you as it relates to proof of the Defendant's intent in this instance. You must not consider this evidence for any other purpose."

court's decision to allow prior misconduct testimony as proof of intent was beyond the scope of ER 404(b).

■   ER 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This rule is to be read in conjunction with ER 402 and 403. *State v. Smith,* 106 Wn.2d 772, 775, 725 P.2d 951 (1986); *State v. Saltarelli, supra.* When considering misconduct which does not rise to a level of criminal activity, but which may nonetheless disparage the defendant, extreme caution must be used to avoid prejudice. 5 K. Tegland, Wash. Prac., *Evidence,* Comment 404, at 258 (2d ed. 1982).

ER 402 prohibits admission of evidence which is not relevant; ER 403 requires exclusion of evidence, even if relevant, where the prejudicial effect outweighs the probative value. *Smith,* at 775–76; *State v. Goebel,* 36 Wn.2d 367, 379, 218 P.2d 300 (1950). Before proceeding with admission of evidence of misconduct, the trial court must identify the purpose for which the evidence is to be admitted, *Smith,* at 776; *Saltarelli,* at 362, and determine its relevancy. In determining relevancy, the trial court must decide (1) if the purpose for which the evidence is admitted affects the outcome of the action and (2) if the evidence tends to make the fact more probable than not. *Saltarelli,* at 362–63. After determining relevancy, the court must then weigh the prejudicial effect and where the decision is doubtful, the scale must tip in favor of the defendant and the exclusion of the evidence. *State v. Smith, supra; State v. Bennett,* 36 Wn. App. 176, 180, 672 P.2d 772 (1983). Finally, if the evidence is admitted, the jury must receive a proper instruction limiting the use of the evidence to the announced purpose. *State v. Thamert,* 45 Wn. App. 143, 149–50, 723 P.2d 1204, *review denied,* 107 Wn.2d 1014 (1986); *State v. Gatalski,* 40 Wn. App. 601, 607–08, 699 P.2d 804, *review*

*denied,* 104 Wn.2d 1019 (1985).

The intent of the accused is a critical element in the prosecution of custodial interference. Thus, this crime is distinguished from others, *i.e.,* armed robbery, where the mere doing of the act demonstrates a criminal intent; there, evidence of other misconduct is not admissible unless the defendant, himself, raises the issue of intent. *Saltarelli,* at 366; *State v. Smith,* 103 Wash. 267, 268, 174 P. 9 (1918); Comment, *Admission of Evidence of Other Misconduct in Washington To Prove Intent or Absence of Mistake or Accident: The Logical Inconsistencies of Evidence Rule 404(b),* 61 Wash. L. Rev. 1213, 1222 (1986).

Where intent is not inferred from the act, evidence of misconduct other than the crime charged may be used to affirmatively prove intent under the "doctrine of chances."[4]

Ms. Myers alleges she attempted to put the children on the plane to their father on two different occasions, but failed because of her son's refusal to board. She denies any criminal intent to harass or deny the children's father his right to custody. The State, through its use of the other acts of misconduct, is attempting to persuade the jury her intent was criminal.

In *State v. Brown,* 30 Wn. App. 344, 633 P.2d 1351 (1981), the defendant was charged with prostitution loitering. The State offered evidence of two prior convictions for prostitution to prove the defendant's intent. Citing *Seattle v. Jones,* 79 Wn.2d 626, 488 P.2d 750 (1971) and *State v. Goebel, supra,* the court upheld the admission of the convictions. *See also State v. Bouchard,* 31 Wn. App. 381, 384–

---

[4]"The doctrine of chances is based entirely on probabilities. Its foundation is the instinctive recognition that the odds against an innocent person being repeatedly involved in similar suspicious circumstances increase with each incident. At some point of recurrence, the similar repeated acts can no longer be viewed as coincidental. When the evidence reaches such a point, the recurrence of a similar unlawful act tends to negate accident, inadvertence, good faith, or other innocent mental states, and tends to establish by negative inference the presence of criminal intent." Comment, 61 Wash. L. Rev. at 1225–26. *See also* 2 J. Wigmore, *Evidence* § 302, at 241 (1979); *State v. Bowen,* 48 Wn. App. 187, 194, 738 P.2d 316 (1987).

85, 639 P.2d 761 (evidence of prior sexual activities admissible to prove absence of mistake), *review denied,* 97 Wn.2d 1021 (1982); *State v. Gatalski, supra* at 608 (evidence of attempted rape which occurred at same time as attempted kidnapping admissible to show absence of mistake or accident).

An extensive review of the law in this area is found in Comment, 61 Wash. L. Rev. 1213. The author suggests evidence of extrinsic misconduct be admitted only where such evidence is highly distinctive, highly similar, with a strong showing of repetition. Comment, 61 Wash. L. Rev. at 1234. Thus, the extrinsic misconduct is more likely to prove the fact at issue rather than illustrate the defendant's propensity to commit a particular crime. *See United States v. Carter,* 760 F.2d 1568, 1579 (11th Cir. 1985); *United States v. Guerrero,* 650 F.2d 728, 733 (5th Cir. 1981).

Here, we cannot conclude the four prior incidents involving custody were relevant to prove Ms. Myers' intent at the time she failed to return the children. Two of those incidents took place prior to the final award of custody to the children's father. The other two incidents occurred 4 years prior to the information of October 1984. From 1981 until 1984, Ms. Myers cooperated with her husband on visitation and custody. Because her misconduct does not rise to the level of criminal activity, we must use extreme caution to avoid prejudice. 5 K. Tegland, at 258. Here, we conclude, because of the questionable relevancy, the scale must tip in favor of the defendant and the evidence must be excluded. *See State v. Allery,* 101 Wn.2d 591, 599, 682 P.2d 312 (1984).

■ Whether improper admission of evidence under ER 404(b) is prejudicial is determined under the nonconstitutional standard: the error is harmless if, within reasonable probabilities, the outcome of the trial would have been different had the error not occurred. *State v. Thamert, supra* at 151 (citing *State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984)). *See also State v. Jones,* 101 Wn.2d 113, 124, 677 P.2d 131 (1984); *Saltarelli,* at 362; *Robtoy,* at 44.

To determine the probable outcome, the focus must shift to the evidence which remains after the prior acts of misconduct have been excluded. *State v. Tharp,* 96 Wn.2d 591, 599, 637 P.2d 961 (1981). Here, the only other evidence offered by the State of Ms. Myers' intent to keep the children was a statement by the school secretary in Rochester, Washington, who confirmed she received a request from Ms. Myers for school records for the two children on August 24, 1984. In order to assess whether the outcome of the trial would have been different, we must balance this fact against the undisputed testimony that Ms. Myers attempted twice to put her children on the plane to Washington, but failed because her son refused to board and ran away each time until he was apprehended by airport security. Additionally, a school psychologist from Alaska, who counseled the son after the airport incident, stated "[i]t was very evident that she [Ms. Myers] had tried to persuade him" to return to his father and that she had advised Ms. Myers "[d]on't send him back until you resolve it with your ex-husband". Thus, we find the State's evidence does not, within reasonable probabilities, support a guilty verdict and conclude the error was prejudicial. *State v. Bowen,* 48 Wn. App. 187, 195, 738 P.2d 316 (1987).

Ms. Myers next contends the court erred when it failed to declare Betsy Leever and Judy Wolverton material witnesses in her case. After Ms. Myers' arrest, the children were placed in the care of Ms. Leever, an Alaskan caseworker, and then, Ms. Wolverton, the children's foster mother.

There is no dispute these two witnesses became involved *after* the arrest of Ms. Myers. The trial court ruled their attendance was not necessary because their testimony was irrelevant to Ms. Myers' intent at the time the children should have been returned.

Whether to allow expert testimony is discretionary with the court, *Harrison v. Whitt,* 40 Wn. App. 175, 698 P.2d 87, *review denied,* 104 Wn.2d 1009 (1985); reversal is mandated only where there is an abuse of that discretion. *State v.*

*Kelly,* 102 Wn.2d 188, 200–01, 685 P.2d 564 (1984).

Former CrR 3.1(f) controls the authorization of funds for services other than counsel:

> Counsel for a defendant who is financially unable to obtain . . . expert . . . services necessary to an adequate defense in his case may request them by a motion. Upon finding that the services are necessary and that the defendant is financially unable to obtain them, the court shall authorize counsel to obtain the services on behalf of the defendant.

*See also Kelly,* at 200. Here, both witnesses were able to testify to events which occurred only after Ms. Myers' arrest, so their testimony was not relevant to her intent to interfere with Mr. Bussanich's custody rights during the time specified in the information. Based on these facts, it cannot be said the court abused its discretion by denying the use of public funds to secure their attendance in court.

The judgment of the Superior Court is reversed; this case is returned to the Superior Court for a new trial.

GREEN and THOMPSON, JJ., concur.