[No. 24552-0-I. Division One. February 11, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. ANTHONY SOUZA, *Appellant.*

*Rita Griffith* of *Washington Appellate Defender Association*, for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Patricia Clark, Deputy,* for respondent.

WINSOR, J.*—Anthony "Herbie" Souza appeals an order of disposition entered in juvenile court finding him guilty of second degree theft. Pursuant to RAP 18.12, the appeal has been referred to a panel of this court for accelerated review.[1]

---

*Judge Robert W. Winsor was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

[1]Souza and his codefendant Duane Lange have filed a joint motion to modify the commissioner's ruling linking their two appeals and referring the cases for consideration before a panel of judges without oral argument. Having considered the motion pursuant to RAP 17.7, we determine that the motion to modify should be denied.

Souza was charged with stealing various items from a residence in Seattle. At a fact–finding hearing, Souza was found guilty of one count of second degree theft. The juvenile court entered the following findings of fact:

I. Duane Charles Lange was born on October 28, 1971. At the time of trial he was 17 years of age. Anthony Jesus Souza was born January 25, 1972. At the time of trial he was 16 years of age.

II. On or about April 5, 1988, Angela Gillmer and several friends went at her suggestion to "rob her house." Among those friends were both Respondents, Herbie Souza and Duane Lange. Duane Lange was not present @ [sic] the time of that suggestion, but knew the enterprise included removing cash belonging to Angela's parents.

III. Among items taken from the house were Angela's own stereo, and numerous items including jewelry, a VCR, a shotgun, a BB gun and cash, which belonged to Angela's parents. Neither Angela nor anyone else had permission to remove from the home any items belonging to the elder Gillmers.

IV. After her arrest Angela gave 3 different statements to police concerning this matter. She testified the third statement was true. Her trial testimony differed in some respects from all 3 earlier statements. Angela was not fully credible in any version. The Court finds credible her testimony that she proposed the "robbery" and that she talked to the others about dismantling the stereo and VCR, and that items were carried out of the house to the car by Respondents (including a rifle, the VCR, a BB gun and a shotgun).

V. A shotgun belonging to Angela's parents was sold by Duane Lange for cash which the juveniles then used in part for lodging in a motel.

VI. The juveniles were arrested on April 6, 1988. A vehicle belonging to Respondent Duane Lange was parked outside a motel room they rented and was found to be full of belongings removed from the Gillmer home. One juvenile fled the scene; Duane Lange, Herbie Souza and Angela Gillmer were arrested. Angela and Herbie gave false names.

VII. Both Respondents gave statements to police which were received in evidence. The statements were credible, and clearly established that both Respondents were aware that [items] removed from the house by them and Angela and another friend, Raquel, included items not belonging to Angela, and which she had no permission to remove.

VIII. Both Respondents were full participants in the exertion of unauthorized control over items belonging to Angela Gillmer's parents.

IX. The value of property stolen exceeded $250.

Based on these findings, the court entered the following conclusions of law:

I. The evidence establishes, beyond a reasonable doubt, that both Respondents were full participants in the theft, both as principals and as accomplices to the thefts of the others.

II. The evidence establishes beyond a reasonable doubt that the value of items stolen exceeded $250.

III. The Respondents Duane Lange and Herbie Souza are both guilty of Theft in the Second Degree, as charged.

Souza assigns error to the court's findings of fact and conclusions of law. He contends that the court's findings are insufficient to support the disposition order since they omit an essential element of the offense charged, the intent to deprive. The State of Washington has filed a brief in which it concedes that the court's findings of fact and conclusions of law are inadequate. We have independently reviewed the matter and agree that the concession of error is well taken.

JuCR 7.11 provides in pertinent part:

(c) **Decision on the Record.** The juvenile shall be found guilty or not guilty. The court shall state its findings of fact and enter its decision on the record. The findings shall include the evidence relied upon by the court in reaching its decision.

(d) **Written Findings and Conclusions on Appeal.** The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal.

Under this rule, the court in a juvenile adjudicatory hearing is required to enter formal findings of fact and conclusions of law as to each element of the offense charged. *State v. Commodore,* 38 Wn. App. 244, 250, 684 P.2d 1364, *review denied,* 103 Wn.2d 1005 (1984); *State v. Fellers,* 37 Wn. App. 613, 616, 683 P.2d 209 (1984).

▮ Here, the court's findings fail to address the statutory element of intent to deprive which is a necessary element of second degree theft. RCW 9A.56.040(1); 9A.56-.020(1)(a); *State v. Vargas,* 37 Wn. App. 780, 782, 683 P.2d

234 (1984). The court's findings are, therefore, inadequate. *See State v. Commodore, supra.*

The next issue is what is the appropriate remedy. Souza contends that, since the State has conceded error, the disposition should be reversed and the charge dismissed. Souza argues that he will be placed in jeopardy twice for the same offense unless the charge against him is dismissed.

"The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States,* 437 U.S. 1, 11, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978). The purposes and policies underlying the double jeopardy clause are discussed in *Serfass v. United States,* 420 U.S. 377, 387–88, 43 L. Ed. 2d 265, 95 S. Ct. 1055 (1975), as follows:

> "The constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green* v. *United States,* 355 U. S. 184, 187–88 [2 L. Ed. 2d 199, 78 S. Ct. 221] (1957).

Citing *State v. Jones,* 34 Wn. App. 848, 664 P.2d 12 (1983), the State argues that the appropriate disposition is vacation and remand to the trial court for entry of further findings. In *Jones,* the trial court failed to make a required finding as to an essential element of the charged offense. A panel of this court concluded that the written findings of fact were inadequate, vacated the judgment of the trial court and remanded the case to the trial court for the entry of findings of fact and conclusions of law with respect to the omitted element of the offense charged. The court went on to state "[t]he trial court may, in its discretion, receive

such additional material evidence relative to this issue as either party may present and shall enter such order or judgment and sentence based thereon as it shall deem appropriate." *State v. Jones, supra* at 851. Although we find the holding of *Jones* substantially correct, we disagree with it to the extent it authorized either party to present additional evidence in the case. Such a procedure risks violating the double jeopardy clause by "affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States, supra* at 11.

Relying primarily on *United States v. Jenkins,* 420 U.S. 358, 43 L. Ed. 2d 250, 95 S. Ct. 1006 (1975), Souza argues that, even if the trial court receives no additional evidence, a remand to permit the entry of supplemental findings here would violate the prohibition against double jeopardy. Souza's reliance on *Jenkins* is misplaced. *Jenkins* has been overruled in *United States v. Scott,* 437 U.S. 82, 57 L. Ed. 2d 65, 98 S. Ct. 2187 (1978).

In addition, *Jenkins* is clearly distinguishable on its facts. In *Jenkins,* the defendant was *acquitted* at the original trial, and the government appealed. A defendant who has been acquitted at trial on the ground of insufficient evidence to convict may not be retried for the same offense. *United States v. Ball,* 163 U.S. 662, 41 L. Ed. 300, 16 S. Ct. 1192 (1896). In deciding whether double jeopardy bars further criminal proceedings, courts attach particular significance to an acquittal. *United States v. Scott,* 437 U.S. at 91. As stated in *Scott,*

To permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that "even though innocent he may be found guilty." . . . On the other hand, to require a criminal defendant to stand trial again after he has successfully invoked a statutory right of appeal to upset his first conviction is not an act of governmental oppression of

the sort against which the Double Jeopardy Clause was intended to protect.

*United States v. Scott, supra* at 91; *see also* 3 W. LaFave, *Criminal Procedure* § 24.3 (1984).

 Unlike the defendant in *Jenkins,* Souza was found guilty. Although the omission of a finding of intent to deprive may reflect the trial judge's considered opinion that the State failed to prove the requisite criminal intent, that possibility seems utterly inconsistent with the findings made and the court's conclusions that Souza was guilty of second degree theft. We thus cannot be certain whether the absence of an express written finding on the statutory element of "intent to deprive" was directly related to a determination by the trial judge on Souza's guilt or innocence.[2]

The trial court's failure to enter complete findings here is more likely a matter of trial error than evidentiary insufficiency. The distinction between reversals due to trial error and those resulting from evidentiary insufficiency is explained in *Burks* as follows:

> [R]eversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, *e. g.,* incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. . . .
>
> The same cannot be said when a defendant's conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been

---

[2]As recently as 1984, courts in a juvenile adjudicatory hearing were not required to enter written findings of fact and conclusions of law. *State v. Fisher,* 40 Wn. App. 888, 890–91, 700 P.2d 1173 (1985); *State v. McGary,* 37 Wn. App. 856, 861, 683 P.2d 1125 ("The primary purpose in requiring findings and conclusions is to enable an appellate court to review the questions raised on appeal."), *review denied,* 102 Wn.2d 1024 (1984). Considering the evidence presented at the fact–finding hearing, a reasonable person could find facts supporting all the essential elements of second degree theft.

given one fair opportunity to offer whatever proof it could assemble.

*Burks v. United States,* 437 U.S. at 15–16.

A remand to permit entry of additional findings in this case is not done in the face of an acquittal based on evidentiary insufficiency. The State is not relieved of its burden of proving each element of the charged offense beyond a reasonable doubt. The defect in the court's written findings of fact and conclusions of law is not necessarily attributable to any failure on the part of the prosecution to prove its case. The insufficiency of the findings can be cured without the introduction of any new evidence. The defect is based entirely on the trial court's failure to enter formal findings on each element of the offense charged. Since in our view there was sufficient evidence to permit the finding that was omitted, the proper remedy is vacation and remand to permit entry of further findings if appropriate. *State v. Greco,* 57 Wn. App. 196, 205, 787 P.2d 940, *review denied,* 114 Wn.2d 1027 (1990); *State v. Commodore, supra* at 249 n.4; *State v. Jones, supra* at 851.

Souza also argues that dismissal of the charge is the appropriate remedy on the theory that an absence of a finding of fact on a necessary element of the offense charged should be construed as a negative finding against the State. Souza relies on the long–standing rule in civil cases that "the failure of the trial court to make an express finding on a material fact requires that the fact be deemed to have been found against the party having the burden of proof." *Crites v. Koch,* 49 Wn. App. 171, 176, 741 P.2d 1005 (1987). However, our survey of the civil cases that apply the rule reveals that the overwhelming majority of those cases used the rule either (1) as a basis for upholding the decision of the trial court, *Golberg v. Sanglier,* 96 Wn.2d 874, 639 P.2d 1347 (1982); *Ingle v. Ingle,* 183 Wash. 234, 236, 48 P.2d 576 (1935); *Jet Boats, Inc. v. Puget Sound Nat'l Bank,* 44 Wn. App. 32, 48, 721 P.2d 18, *review denied,* 106 Wn.2d 1017 (1986); *Pilling v. Eastern & Pac. Enters. Trust,* 41 Wn. App. 158, 165, 702 P.2d 1232, *review denied,*

104 Wn.2d 1014 (1985); *McCutcheon v. Brownfield,* 2 Wn. App. 348, 356, 467 P.2d 868 (1970), or (2) where there is no evidence in the record to support the missing finding. *Smith v. King,* 106 Wn.2d 443, 451, 722 P.2d 796 (1986); *In re Estate of Bowechop,* 52 Wn. App. 775, 778, 764 P.2d 657 (1988); *Crites v. Koch, supra; Omni Group, Inc. v. Seattle–First Nat'l Bank,* 32 Wn. App. 22, 28, 645 P.2d 727, *review denied,* 97 Wn.2d 1036 (1982); *Batten v. Abrams,* 28 Wn. App. 737, 744, 626 P.2d 984 (1981); *Manufacturers Acceptance Corp. v. Irving Gelb Wholesale Jewelers, Inc.,* 17 Wn. App. 886, 893, 565 P.2d 1235 (1977).[3]

 Moreover, there is a well–recognized exception to the rule, even in civil cases. Our courts have refused to apply the presumption in civil cases where the end result would be directly contrary to evidence presented at trial. *Tacoma Comm'l Bank v. Elmore,* 18 Wn. App. 775, 778–79, 573 P.2d 798 (1977); *LaHue v. Keystone Inv. Co.,* 6 Wn. App. 765, 776, 496 P.2d 343 (1972); *see also Fisher Properties, Inc. v. Arden–Mayfair, Inc.,* 115 Wn.2d 364, 371, 798 P.2d 799 (1990). As stated in *LaHue,*

> It is true that we have heretofore held that the absence of a finding upon a material fact, the burden to prove which is upon the plaintiff, is in effect a finding that no such fact exists. *McCutcheon v. Brownfield,* 2 Wn. App. 348, 67 P.2d 868 (1970). However, this principle is inapplicable, at least for purposes of affirming the judgment, if there is uncontradicted evidence which the appellate court can hold requires a finding to the contrary.

*LaHue v. Keystone Inv. Co., supra* at 776.

Assuming these principles apply in juvenile offense proceedings, the evidence presented at the fact–finding hearing clearly aligns this case more with the exception than the general rule. This court has specifically refused to apply the rule in a criminal case. *State v. Commodore, supra* at 249

---

[3]The only cases to the contrary appear to be *Baillargeon v. Press,* 11 Wn. App. 59, 67, 521 P.2d 746, *review denied,* 84 Wn.2d 1010 (1974) and *Pacesetter Real Estate, Inc. v. Fasules,* 53 Wn. App. 463, 475, 767 P.2d 961 (1989), but in both cases there were rather clear reasons to believe that the trial judge had reasons for omitting the findings, and the issue was not discussed in detail.

n.4.[4] Since the evidence introduced at the hearing regarding the missing element of intent to deprive was disputed, however, the case should be remanded to permit the entry of revised findings. This procedure achieves the best balance between the competing interests of the accused and the State. Souza's constitutional rights are protected while at the same time the State is not necessarily precluded from punishing him simply because of the obvious error that may have resulted from oversight.

The disposition order is vacated and the case is remanded to the trial judge to permit entry of any additional findings she believes are warranted, based only upon the evidence already presented. We are by no means directing the trial court to make any additional findings but leaving it entirely to its judgment based upon such evidence as was found to be credible and persuasive.

BAKER, J., concurs.

FORREST, J. (dissenting)—I dissent. In a juvenile delinquency proceeding the judge's findings and conclusions are the functional equivalent of a jury verdict in a criminal proceeding and should be treated in the same manner. The majority's interpretation of JuCR 7.11 permits any deficiency in the findings and, I presume, in the conclusions, to be remedied by a remand for further consideration by the trial judge, so long as the record would arguably support the missing findings. In this case, the majority in substance tells the trial court: We cannot understand why you did not make a finding of intent because we believe the evidence

---

[4]We have only found one reported case in which an appellate court has applied the rule in a criminal case. In *State v. Jacobson*, 36 Wn. App. 446, 450, 674 P.2d 1255 (1983), the court held that "the absence of a finding of [governmental misconduct or arbitrary action] is, in effect, a determination that there was none." However, the court in *Jacobson* also conducted an independent review of the record and concluded that there was absolutely no evidence to support such a finding. *State v. Jacobson, supra.* Unlike *Jacobson*, a blanket application of the rule here may actually hinder the administration of justice since there is ample evidence in the record to rebut the presumption set forth in the rule.

would support such a finding: please take a second look at the evidence to see if the appellant had the necessary intent. Such a remand is inconsistent with *In re Winship*,[5] which applied full criminal due process standards to juvenile delinquency proceedings, including the requirement of proof of all the essential elements beyond a reasonable doubt.

The majority relies heavily on *State v. Jones*,[6] which held that remand, not reversal, is the appropriate disposition when the trial court enters findings of fact but fails to enter a finding as to an element of the crime charged. The majority, at 539, finds the holding of *Jones* substantially correct. However, the *Jones* holding is devoid of analysis and merely cites five cases as controlling: *Seattle v. Silverman; State v. Helsel; State v. Russell; State v. Wilks;* and *State v. Eldridge*.[7] An examination of those cases discloses that in each the court remanded for entry of findings because *no* findings of fact or conclusions of law had been entered.[8] As the *Helsel* court correctly noted: "We cannot consider this appeal since, without the findings of fact and conclusions of law, the record of this case does not fully indicate the basis upon which the trial court entered its judgment." *Helsel,* at 82–83. None of these cases discuss the proper disposition when the findings are insufficient to sustain the conviction.

---

[5] 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970).

[6] 34 Wn. App. 848, 664 P.2d 12 (1983). The majority does recognize that *State v. Jones, supra,* clearly erred in stating that upon such remand the trial court could take additional evidence. Such procedure would clearly violate double jeopardy.

[7] 35 Wn.2d 574, 214 P.2d 180 (1950); 61 Wn.2d 81, 377 P.2d 408 (1962); 68 Wn.2d 748, 415 P.2d 503 (1966); 70 Wn.2d 626, 424 P.2d 663 (1967); 17 Wn. App. 270, 562 P.2d 276 (1977).

[8] Although it is hard to understand how such a record can reach the appellate court, I agree that in such circumstances remand is appropriate.

The other cases cited by the majority in support of its holding are *State v. Greco*[9] and *State v. Commodore.*[10] The *Greco* court did not analyze or discuss the issue but merely cited *State v. Russell*[11] and *State v. Jones, supra.* Nor did the *Commodore* court discuss the issue; its statement that remand would be appropriate is contained as dicta within a footnote. In summary, no Washington court has given a reasoned basis for allowing the trier of fact to reevaluate the evidence to make the additional findings necessary to sustain a conviction.

The majority, at 540, merely states baldly that it seems likely the failure to find was a "trial error" rather than an insufficiency of the evidence. The majority cites *Burks v. United States*[12] for the distinction between reversals due to trial error and those resulting from evidentiary insufficiency. Failure to find is not one of the trial errors mentioned in *Burks*. However, if the failure was a "trial error," to be consistent with *Burks* the majority should reverse for a new trial, not remand for additional findings.

I do not find this distinction persuasive because it does not address the facts of our case. Here, there is no error in the admission of evidence or conduct of the trial. The "error" was that the trier of the facts failed to find the facts necessary for conviction. If such a failure to find was deliberate, I think it is apparent that double jeopardy principles are violated. The prosecution is given two opportunities to persuade the trier of fact to find the facts necessary for conviction, which is tantamount to being given two chances to convict the defendant, albeit on the same evidence.

---

[9]57 Wn. App. 196, 787 P.2d 940, *review denied,* 114 Wn.2d 1027 (1990).

[10]38 Wn. App. 244, 249 n.4, 684 P.2d 1364, *review denied,* 103 Wn.2d 1005 (1984).

[11]68 Wn.2d 748, 415 P.2d 503 (1966).

[12]437 U.S. 1, 15–16, 57 L. Ed. 2d 1, 98 S. Ct. 2141 (1978).

As a practical matter, the majority may well be right that in this particular case the failure to find the intent to deprive was an oversight rather than a deliberate decision.[13] But how is the appellate court to know when a failure to find is an oversight, and when it accurately represents the judge's view of the evidence at the time of decision? The entry of findings and conclusions is a considered and formal judicial act vastly different from the informal oral opinion judges give at the end of a case. The prosecutor, who normally prepares the findings, has time to do a thoughtful job, and the court has time to consider whether these are the findings it indeed wishes to make. Under such circumstances, it is inappropriate for the appellate court to assume that some mere "trial error" has occurred, where such assumption, if wrong, will result in a double jeopardy. We should not adopt a rule that allows an appellate court to go behind the findings to speculate on the reason for the absence of a finding as to an element of the crime.

There is no more reason to remand to let a prosecutor urge a judge to make a finding he did not make than it would be to allow a defendant to urge the judge to delete a finding he did make. A judge's failure to find an element is more significant than a prosecutor's failure to charge an element; yet the latter mandates reversal.[14] In my view, the court's findings, positive or negative, should be treated like a jury verdict.

Although the majority recognizes the well–established civil rule that a failure to find a fact is a finding against the party having the burden of proof as to that fact, it refuses to apply it in this context. Majority, at 541–42. In my view, this rule mandates reversal independent of double jeopardy

---

[13]Here, the facts are simple, but in *Greco* they are complicated and it is far from clear that it was a mere "oversight." If the rule is unsound in some factual situations, it should be modified or abandoned.

[14]*State v. Holt,* 104 Wn.2d 315, 704 P.2d 1189 (1985); *State v. Leach,* 113 Wn.2d 679, 782 P.2d 552 (1989).

principles. *State v. Jacobson.*[15] If a civil litigant is normally entitled to the benefit of the rule, a fortiori a juvenile in a criminal proceeding should be entitled to the benefit of the rule. The uncommonness of its application in the criminal context is more likely due to the infrequency of the type of problem here faced, than any inappropriateness in the applying rule.

After rejecting the rule as applicable to juvenile delinquency proceedings, the court goes on to find that the facts of this case fall within an exception to the rule, citing *LaHue v. Keystone Inv. Co.*[16] However, *LaHue* refuses to apply the rule when there is *"uncontradicted evidence"* as to the fact at issue. Here, the majority concedes that the evidence of intent is disputed. *LaHue* and similar cases do not justify applying the exception to the appellant. *LaHue* refuses to apply the rule to affirm where there is uncontradicted evidence requiring reversal, not, as here refusing to apply the rule where a *disputed* fact is not found. The two situations are not parallel and *LaHue* is not controlling.

A remand where the findings are insufficient to sustain a conviction subjects the juvenile to double jeopardy and denies him criminal due process by failing to apply the rule that a failure to find is a finding against.

I would reverse and dismiss.

Review denied at 116 Wn.2d 1026 (1991).

---

[15] 36 Wn. App. 446, 450, 674 P.2d 1255 (1983) (Reviewing a murder trial, the appellate court stated that "the absence of a finding of [prosecutorial misconduct] is, in effect, a determination that there was none.").

[16] 6 Wn. App. 765, 776, 496 P.2d 343, *review denied*, 81 Wn.2d 1003 (1972).